BARR, District Judge.
This case comes to me upon a demurrer to the bill, and the ground of the demurrer is that the amount in -controversy does not exceed $2,000, exclusive of interest and costs, *763 l;o as to give this court jurisdiction. The hill is for the foreclosure l)f a mortgage for a note dated March 28, 1890, for the sum of §2,000, Blearing interest at the rate of 6 per cent, per annum, interest paylible monthly. The following is a part of the note:
I “It is understood that this note is given for a loan obtained on 40 shares of ■stock of said United States Savings Loan & Building Company, and, if the maker ■lereof fails to make any monthly payment on said stock, or to pay any install■ment of interest for a period of three months after the same is due, then the ■whole amount of this note shall become due and payable. But if the maker hereof ■shall pay all installments of interest which become due hereon, and all monthly ■payments and fines which become due on said stock until said monthly payments ■shall have been past due for a period of six months, then, upon the surrender of ■said stock to said company, this note shall be deemed to be fully paid and eanIceled. This note is understood to be made with reference to and under the law's ■of the state of Minnesota.”
I The mortgage is executed upon real estate in Kentucky, in wbicb lit is provided that:
| “If the said party of the first part [the mortgagor], his heirs, executors, adminisItrators, or assigns, shall well and truly pay or cause to be paid to the said party of I the second part, its successors or assigns, at the office of the treasurer at St. Paul, I Minnesota, or at the office of its trustee, Minneapolis, Minnesota, $2,000 and inIterest, according to the conditions of one promissory note executed by Charles IB. Sullivan [the mortgagor], said party of the first part, to said party of the second I part, bearing even date herewith, payable after three years from date and before I nine years from date, wdth interest on $2,000 before and after maturity at the I rate of six per cent, per annum until paid, interest payable monthly, or shall pay I or cause to be paid to the treasurer of said company all installments of interest I which become due on said note, and all fines and monthly payments w'hich become I due on said stock until said stock becomes fully paid in, and of the value of $100 per share, and before any of said installments of interest or monthly payments shall have been past due for a period of six months, and shall then surrender said stock to said company in payment of said note, then this deed shall be null and void; otherwise to remain in full force and effect. But, if default be made in the payment of said sum or sums of money, or of any installment of interest thereon, or of any monthly payment on said stock for a period of three months after the same shall be due, or any part of either, or in effecting the insurance or in paying the taxes or assessments at the time or times hereinbefore specified for the payment thereof, or in any condition in this mortgage contained, then, and in either or any such case, the whole principal sum or sums secured by this mortgage, and the interest thereon accrued up to the time of such default, shall, at the elect tion of said second party, its successors or assigns, or its or their agent, become thereupon due and payable immediately upon said default; and the said party of the first part doth hereby authorize and empower the said party of the second part, its successors or assigns, the owner hereof, its agent and attorney, at its or their election, and without notice of such election, to foreclose at once this mortgage for the whole of said principal sum or sums and accrued interest and money paid for taxes, assessments, and insurance, as herein provided, or to foreclose for such sum or sums and interest and money paid as may be due and payable by the terms of said note hereby secured; and to sell the hereby said premises at public .auction, and convey the same to the purchaser in fee simple, agreeably to the statutes in such case made and provided; and out of the money arising from such sale to retain the principal and interest and fines then accrued on the sum or sums so elected to be foreclosed for, together with any insurance, assessments, or taxes paid as above stipulated, and all costs and charges of such foreclosure, including seventy-five dollars ($75) attorney’s fees for foreclosing this mortgage, and pay the ■overplus, if any, to the said party of the first part, his heirs, executors, administrators, and assigns.”
There are two certificates, each, for 20 shares of stock. Certificate Ko. 22,121 is assigned absolutely to the complainant as a pre *764 mium for the loan granted to the defendant, and certificate No 4,382 for 20 shares is assigned as collateral security for said loan There is a provision in each of the certificates that the shareholdei agrees to pay 60 cents monthly on each share until said share matures or is withdrawn, and this monthly installment is due and must be paid on the second Tuesday of each month. Fifty-three cents of each monthly payment on each share and all fines shall be paid by the treasurer to the trustee on account of the loan fund, and the -.other seven cents of each installment shall go to the expenses. There is also a provision that there should be a fine of 10 cents due and payable on each share, if not paid when due, and a fine of 15 cents on each share for each subsequent monthly default.
The bill alleges that tire contract between the parties was intended to be and is governed by the laws of Minnesota, and that by the Minnesota law any premium for a loan is not to be considered asusury, nor to be counted as interest. It appears from the allegations of the bill and the exhibits that the complainant has agreed to pay more than $75 for this foreclosure of the mortgage, and he claims a lien therefor. It also appears that by a resolution of complainant’s board, not dated, but alleged to have been on the - day of April, 1895, this debt was declared matured, defaulted interest as alleged being then payable for a period of 28 months; and directed the principal of said note and mortgage which was in default to be foreclosed, and that the' stock which had been assigned to the company as collateral for the repayment of said loan be canceled, as provided in the by-laws of said company, and credit be given of such amount as would appear to be the withdrawal value of such stock after cancellation of same.
The accounts filed for the payment of interest on said note show that the monthly installments were paid, with the exception of one of the months, up to April, 1893, the last payment being $60, made December 3, 1892. It also shows that there was paid on certificate of stock No. 4,382, $492.34, the last payment being made December 3, 1892, and the amount $84.34; and on certificate No. 22,121 the installments paid amounted to $456, the last payment being on the 3d of December, 1892, for $72. The total is rendered thus:
Amount of loan.... $2,000 00'
Ctf. 4,382, stock ... 323 66
“ “ fines ... 80 00
“ 22,121, premium 336 00'
. “ “ fines . .. 83 00
“ “ interest 280 00'
$3,102 66-
Less book value Ctf. 4,382, 20 sbrs................................ 979 60
$2,123 06'.
In this statement there is a balance claimed of $2,153.06,—more than enough to give this court jurisdiction. But in this account the installments of dues as charged do not stop with the month of April, 1893, but run down to and include the month of September,. 1895, on both the certificates of stock, thus including five monthly *765 installments after the resolution of April, 1895, declaring the stock canceled. There is debited in this account, it will be seen, $280 interest on the loan, which is the balance after giving credit for $380 paid; but in this account there is interest charged up to and including September, 1895,—five or six months after the debt is declared to be matured. We think these installments of dues, after April, 1895, and the monthly installments of interest, are not justified by any construction that can be placed upon- either the contract of the parties or the resolution of complainant’s board. But, beyond this, we think that by the terms of the' contract between the parties that, if they elected to mature the debt, it must be as of the date of three months after default, as it will be observed, the language of the note itself is that, “if the maker hereof fails to make any monthly payment on said stock, or to pay any installment of interest for a period of three months after the same is due, .then the whole amount of said note shall become due and payable”; and, while the election is given in the mortgage to the mortgagee to mature or not to mature for such default, we see nothing in the language which changes the time at which the default shall be considered when the election is made. We do not think that the election must be,made at the end of the three months, but that, when made, it must take effect as of that date, and settlements made accordingly.
We have not overlooked the fact that there is another provision of this mortgage and of the note under which a fine can be fixed for nonpayment, which fine can be inflicted for six months, and it may be that the election must be after the three months and within six months after default. This, however, we do not conceive to be the proper construction, but rather that the right to declare the maturity of the debt continued after the six-months default; but it seems to us that the equitable and fair and just construction of the provisions of the note and mortgage require that when the maturity is declared it should be as of at the end of the three months after default. If this be the correct construction of this provision of the contract of the parties, then all charges for dues after three months’ default, made in the fall of 1893, as well as monthly installments of interest charged thereon, are incorrect, and the balance due the plaintiff must be much less than $2,000,—the sum requisite to give this court jurisdiction,—even if we add to such balance the counsel fee of $75, which the defendant agreed to pay the complainant as costs of the foreclosure. We are strongly inclined to think that this $75 is proper to be considered on the question of jurisdiction, and to be estimated in making up the requisite sum, as it is not costs, within the meaning of the act of 1887-88, but a liability based upon the contract of the See MSS. opinion of this court in Rogers v. Riley, 80 Fed. 759.
If we are correct in our construction as to the time when the withdrawal value of the 20 shares represented by certificate No. 1,382 should be determined, it is quite clear that the court has no jurisdiction. I do not perceive, from anything in the exhibits or the allegations in the bill, how the withdrawal value of this stock, $979.60, was arrived at; but I have assumed that that was the correct value *766 at the end of the three months after the default under which the ma| turity of the debt was declared, and the cancellation had. If I ar in error as to this, it may be corrected by an amendment to the billl The demurrer must, therefore, be sustained, but I will not, at presl ent, make an order dismissing the bill, but shall give the oomplain-| ants until the October rules to tender an amendment, if they sc desire. If none is filed, the bill will be dismissed.
See statement below.
The amount of default should be declared as of the end of thel three months after the latest default, which would be, say, OctoberJ 12, 1893, and would be about thus, viz.: •
Amount of loan..................................................
“ “ dues, No. 48
“ “ fines ................................................■ 16
“ “ dues, stock, No. 22,121................................. 60
“ “ fines 19
Interest on loan May 12th to October 12th.......................... 50 001
$2,193 00
By book value, 20 shares, No. 4,382 ................................ 979 60
Total due October 12, 1893.................................. $1,213 401
Add the attorney’s fee........................................... 75 00
$1,288 40 I