## MARTIN v. UNITED STATES.

### (Circuit Court of Appeals, Eighth Circuit. March 13, 1909.)

### No. 2,728.

1. UNITED STATES (§ 52*)—OFFICERS—CLERK OF COMMISSIONER NOT AN OFFICER—"OFFICER OF UNITED STATES."

    One of the clerks of the commissioner to the Five Civilized Tribes, employed at a salary of $1,200 a year under authority granted by Congress to the Secretary of the Interior to employ all assistance necessary to perform the duties of the commissioners to those tribes, was not an officer of the United States, and was not punishable under section 5408, Rev. St. (U. S. Comp. St. 1901, p. 3658), which provides that "every officer having the custody of any record, document, paper, or proceeding, * * * who fraudulently takes away, or withdraws, or destroys any such record, document, or paper," shall suffer the penalties there prescribed.

    [Ed. Note.—For other cases, see United States, Dec. Dig. § 52.*

    For other definitions, see Words and Phrases, vol. 6, pp. 4947, 4948; vol. 8, p. 7737.]

2. UNITED STATES (§ 52*) — "CUSTODY" — DOCUMENT IN CUSTODY OF CHIEF CLERK NOT IN THAT OF SUBORDINATES WHO HAVE ACCESS TO IT.

    "Custody" means keeping, and implies responsibility for the protection and preservation of the person or thing in custody.

    A document in a public office in the general custody of a commissioner and in the particular custody of his chief clerk, under whom five or six

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

subordinate clerks are employed who have access to it in order to discharge their duties, is not in the custody of one of the latter.

[Ed. Note.—For other cases, see United States, Dec. Dig. § 52.*

For other definitions, see Words and Phrases, vol. 2, pp. 1800, 1801; vol. 8, p. 7625.]

3. UNITED STATES (§ 52*)—CUSTODY OF DOCUMENTS—"TAKES AWAY OR WITH-DRAWS" MEANS INJURIOUSLY TAKES AWAY OR WITHDRAWS.

The words "takes away or withdraws" in this section, which subjects an officer who "fraudulently takes away or withdraws, or destroys, a record, or document," must be read with the word "destroys," and they mean a taking away or withdrawal whereby some injury is intended, attempted, or inflicted upon the record or document, or upon some one who has an interest in it and is entitled to use it.

[Ed. Note.—For other cases, see United States, Dec. Dig. § 52.*]

4. UNITED STATES (§ 52*)—CUSTODY OF DOCUMENTS—"FRAUDULENTLY" MEANS METHOD WHEREBY ATTEMPT, OR INTENT, OR EFFECT TO ALTER ANOTHER'S RIGHT EXISTS.

An attempt or an intent to injure or alter the rights or interests of another, or an effect to so injure or alter some of them, is essential to a fraud, and, in the absence of such an intent, attempt, and effect, an act cannot be done fraudulently under this section.

[Ed. Note.—For other cases, see United States, Dec. Dig. § 52.*

For other definitions, see Words and Phrases, vol. 3, pp. 2955-2957.]

5. INDICTMENT AND INFORMATION (§ 63*) — CONCLUSION OF LAW — PLEADING — AVERMENT THAT ACT WAS DONE FRAUDULENTLY FUTILE.

An allegation that an act innocent in itself but criminal if done "fraudulently" was performed fraudulently, or with an intent to defraud, without the averment of any acts or facts tending to show fraud, is a legal conclusion and futile. It is insufficient to charge the offense of fraudulently taking away or removing a record or document under section 5408, Rev. St. (U. S. Comp. St. 1901, p. 3658).

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 185; Dec. Dig. § 63.*]

6. INDICTMENT AND INFORMATION (§ 110*)—LANGUAGE OF STATUTE—PLEADING IN WORDS OF STATUTE INSUFFICIENT WHERE THEY FAIL TO EXPRESS EVERY INGREDIENT OF CRIME.

The crime and every ingredient of which it is composed must be clearly and accurately alleged in the indictment.

Where the statute does not "fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute an offense intended to be punished," an indictment in the words of the statute is insufficient.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 289–294; Dec. Dig. § 110.*]

7. STATUTES (§ 241*)—CONSTRUCTION—STATUTE CREATING OFFENSE OF CLASS INCLUDES ONLY THOSE WITHIN ITS EXPRESS TERMS.

A penal statute which creates and prescribes punishment for an offense committed by a specific class must be strictly construed.

One who was not beyond reasonable doubt within the class by the express terms of the statute may not be brought within it after the event by interpretation.

Ex post facto law by judicial construction is as pernicious as ex post facto legislation.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322–323; Dec. Dig. § 241.*]

(Syllabus by the Court.)

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 104 S. W. 678.

William T. Hutchings and Henry E. Asp (Geo. A. Murphey and Wm. P. Z. German, on the brief), for plaintiff in error.

William J. Gregg, U. S. Atty.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge. The defendant below was convicted and sentenced to imprisonment at hard labor for a year and a day, and to pay a fine of $100 and costs, under section 5408, Rev. St. (U. S. Comp. St. 1901, p. 3658), because he withdrew from the office of the commissioner to the Five Civilized Tribes a roll containing the names of citizens by blood of the Creek Nation of Indians, hereafter called the "Creek roll," and during nights and Sundays, when it was not needed or used in the office, made a copy of it. The provisions of the acts of Congress relevant to the issues in this case are:

"Sec. 5403. Every person who willfully destroys or attempts to destroy, or, with intent to steal or destroy, takes and carries away any record, paper, or proceeding of a court of justice, filed or deposited with any clerk or officer of such court, or any paper, or document, or record filed or deposited in any public office, or with any judicial or public officer, shall, without reference to the value of the record, paper, document, or proceeding so taken, pay a fine of not more than two thousand dollars, or suffer imprisonment, at hard labor, not more than three years, or both." U. S. Comp. St. 1901, p. 3656.

"Sec. 5408. Every officer, having the custody of any record, document, paper, or proceeding specified in section fifty-four hundred and three, who fraudulently takes away, or withdraws, or destroys any such record, document, paper, or proceeding filed in his office or deposited with him or in his custody, shall pay a fine of not more than two thousand dollars, or suffer imprisonment at hard labor not more than three years, or both; and shall, moreover, forfeit his office and be forever afterward disqualified from holding any office under the government of the United States."

The commissioners to the Five Civilized Tribes were authorized "to employ, with approval of the Secretary of the Interior, all assistance necessary for the prompt and efficient performance of their duties," and the Secretary was permitted to detail clerks to aid the commission. Act June 28, 1898, c. 517, § 20, 30 Stat. 502. The defendant had been employed as a clerk by the commission under this authority at a salary at $75 per month, and had been promoted to be a clerk at $100 per month, and that change had been approved by the Secretary of the Interior in April, 1904. By the act of March 3, 1905, c. 1479, 33 Stat. 1060, Congress devolved the unfinished work of the commission upon the Secretary of the Interior, and granted to him all the powers of the commission subsequent to July 1, 1905. Thereafter Tams Bixby became the commissioner to the Five Civilized Tribes, and Wm. O. Beal was his secretary. Thereupon, after July 1, 1905, the commissioner made a schedule of all his employés, including the defendant, which the Secretary of the Interior approved on September 27, 1905, and on October 2, 1905, the defendant took and subscribed the oath, a copy of which may be found in section 1757 of the Revised Stat-

utes (U. S. Comp. St. 1901, p. 1202), as did the stenographer, the janitor, and the other employés of the commissioner.

There were five copies of the Creek roll, one in the office of the Secretary of the Interior at Washington, one in the office of the Commissioner of Indian Affairs at Washington, and three in the offices of the commissioner to the Five Civilized Tribes at Muskogee, one with the Creek enrollment division, one in the Creek land office, and one reserved for delivery to the principal chief of the Creek Nation. The roll in the Creek land office was the one which the defendant took away and copied in the early part of the year 1906. At that time W. S. Hawkins was the chief clerk in charge of that office. The Creek roll in that office was in the custody of this chief clerk, and he was responsible for it to the commissioner, who had the general custody of it. The defendant was one of six or seven clerks under Hawkins in this Creek land office, and Hawkins had authority to assign him to any clerical work to be done in and about the office. These six or seven clerks and the janitors had access to this roll.

The defendant was allotment clerk, and his duties were to receive applications for allotments. He had no use for this roll in the discharge of his duties, because the names for him to allot the lands by were furnished to him by the enrollment division. This roll was kept in the vault at night, and it was not one of the duties of the defendant, but it was one of the duties of the janitor, to bring the roll out in the morning and to carry it back at night. The defendant took this roll out of the Creek land office after office hours, copied it nights and Sundays, returned it in each case so that it was in the office during the hours when the clerks and officers desired to use it, and when the copy was completed finally returned it without injury. Upon this state of facts the Court of Appeals of the Indian Territory held that the defendant was an officer of the United States, that he had the custody of this roll, and that he fraudulently took it away or withdrew it, and it affirmed the judgment below. The defendant has assigned these rulings as error:

1. If the defendant was not an officer of the United States, it was no offense for him to withdraw the Creek roll and to make a copy of it. The offense of which a person who is not an officer may be guilty under the statutes of the United States in this regard is defined by section 5403, which provides that it is only when such a person "willfully destroys, or attempts to destroy, or with intent to steal or destroy, takes and carries away" such a document, that he becomes liable to punishment, and the defendant was guilty of none of these things. But if he was an officer, if he had the custody of the Creek roll, and if he fraudulently took away, withdrew, or destroyed it, he forfeited his office, became forever disqualified from holding any office under the government of the United States, and he is subject to imprisonment and fine under section 5408. In the absence of this section, the act of the defendant was neither legally nor morally wrong. The punishment it prescribes is severe, and a penal statute which creates and denounces a new offense should be strictly construed. The definition of such an offense and the classification of the offenders are

legislative and not judicial functions. An act which is not by the expressed will of the Congress an offense may not be made so after its commission by a broad construction of the statute subsequently adopted by the judiciary. One who does not fall clearly within the class of persons specified in such a law before he performs the act charged upon him may not be brought within that class after the event by judicial construction. United States v. Wiltberger, 5 Wheat. 77, 96, 5 L. Ed. 37; United States v. Germaine, 99 U. S. 508, 510, 25 L. Ed. 482; Field v. United States, 137 Fed. 6, 8, 69 C. C. A. 568, 570; United States v. Clayton, Fed. Cas. No. 14,814; In re McDonough (D. C.) 49 Fed. 360; United States v. Lake (D. C.) 129 Fed. 499.

If section 5408 had declared that every clerk, or every employé, or every person hired by the United States who committed the acts it describes should suffer the punishment it prescribes, the defendant would have fallen clearly within the class thus denounced. But the term "officer" does not designate him as plainly, and as he is charged with a crime as an officer only, if there is a reasonable doubt whether or not he was such, he ought not to be convicted or punished. One who serves the United States for a salary, or for wages, under a contract, is an employé and not an officer. The line which separates officers from employés is shadowy, and possibly not susceptible of precise definition, but there are persons who are readily recognized as officers of the United States, and others who are easily perceived to be employés and not to be officers. The classes have certain characteristics which may well be considered in assigning any person to his proper class. Greater importance, dignity, and independence mark the position of an officer than that of an employé. The clerkship of the defendant was not characterized by much more importance, dignity, or independence than the positions of the stenographers or the janitors, or the other employés about him. He was subject to the orders of the chief clerk, as they were; he was liable to summary discharge by the commissioner without cause, as they were. The duties of an officer are generally, but not always, prescribed by law, but the duties of the defendant were not. His duties, like those of ordinary employés, were to do whatever the chief clerk or the commissioner directed him to do. The emoluments of an officer are ordinarily fixed by law. The salary of the defendant was not. It was named by the commissioner who employed him, and his determination was approved by the Secretary of the Interior.

A definite term of office during which an officer has the right to hold his office is often, though not always, fixed by law. But the defendant held his clerkship by no such tenure, and he held it for no term whatever. When the commissioners to the Five Civilized Tribes who first employed him ceased to continue in office, and their duties and powers devolved upon the Secretary of the Interior, his clerkship ceased, and the commissioner then employed him again. Section 5408 bears in itself inherent evidence that Congress never intended that a clerk holding a position without duration, subject to termination at the will of his superior, and without the right to retain it, without

tenure, should be subject to the penalties it prescribes, because one of those penalties is the forfeiture of his office, and that would be no punishment whatever to one who holds a position without tenure, without duration, without fixed duties or fixed emoluments.

The Constitution of the United States, art. 2, § 2, provides that the President, by and with the advice and consent of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States whose appointments are not therein otherwise provided for and which shall be established by law, but that Congress may by law vest the appointment of such inferior officers in the President alone, in the courts of law, or in the heads of departments. The clerkship of this defendant was never established by any law. The authority under which his service was secured was not to appoint an officer to an office established by act of Congress or by regulation of the department, but "to employ all assistance necessary for the prompt and efficient performance" of the duties of the commissioners (Act June 28, 1898, c. 517, § 20, 30 Stat. 562; Act March 3, 1905, c. 1479, 33 Stat. 1060), and, when the Secretary of the Interior approved the defendant's employment in common with that of the other employés of the commissioner, he labored under no misapprehension, and did not undertake to create an office for the defendant or to approve his appointment to one. His telegram read:

"Complying with your recommendation in telegram of twenty-fifth schedule of employees on July first hereby approved from October first instead of July first."

An officer generally takes an oath of office, and an employé does not, and the defendant took such an oath. But one may not by taking an oath of office create an office of the United States and make himself its incumbent. And because the defendant's services were secured under authority granted to the Secretary of the Interior to employ assistance, because his position was never made an office by law, because it had neither duration nor tenure, because its duties were not prescribed, nor its emoluments fixed, by law, and because it was without greater dignity, importance, and independence than the positions of many other employés, and it had much less of either than many inferior offices of the United States have, our conclusion is that the defendant was not an officer of the United States, and was not liable to the penalties denounced by section 5408. If Congress had intended that every clerk or employé should be subject to the severe penalties of that section, it would not have failed to use some such apposite expression as "clerk," or "servant," or "person in the employment of the government," and it would be a violation of a familiar and salutary rule of law to insert these terms in this statute by construction after the event. Ex post facto law by judicial construction is not less pernicious than ex post facto law by legislation. United States v. Schlierholz (D. C.) 133 Fed. 333; United States v. Schlierholz (D. C.) 137 Fed. 616; United States v. Germaine, 99 U. S. 508, 510, 25 L. Ed. 482; United States v. Mouat, 124 U. S. 303, 8 Sup. Ct. 505, 31 L. Ed. 463; United States v. Hartwell, 6 Wall. 385, 393,

18 L. Ed. 830; Williams v. United States, 168 U. S. 382, 387, 18 Sup. Ct. 92, 42 L. Ed. 509; Throop v. Langdon, 40 Mich. 673, 685; Hall v. Wisconsin, 103 U. S. 5, 26 L. Ed. 302; Auffmordt v. Hedden, 137 U. S. 310, 11 Sup. Ct. 103, 34 L. Ed. 674. This conclusion has not been reached without an examination and consideration of the opinions of the courts upon somewhat similar questions under other statutes and circumstances in United States v. Hendee, 124 U. S. 309, 8 Sup. Ct. 507, 31 L. Ed. 465, United States v. McCrory, 91 Fed. 295, 33 C. C. A. 515, and McGregor v. United States, 134 Fed. 187, 195, 69 C. C. A. 477.

2. It was an officer "having the custody" of the record or document specified in section 5408 only that was liable to its penalties, and there was no substantial evidence at the trial that the defendant ever had the custody of the Creek roll. "Custody" means keeping, and implies responsibility for the care and the guarding against harm of the person or thing intrusted to the custodian. He who has the custody of an office building is responsible for its care and preservation, but such a building is not in the custody of those who have access to and use it. The books of a library are in the custody of the librarian, but they are not in the custody of those who may have the right to enter the library and to read and use them. The records and files of a court are in the custody of its clerk, but they are not in the custody of his stenographers, or of his other employés, who are not his legal deputies, or of the attorneys who may examine and use them. There was no evidence that the Creek roll was ever intrusted to the care or keeping of the defendant, or that he ever assumed responsibility therefor. The testimony went no farther than to show that he was one of six subordinate clerks who had access to it and the right to examine and use it in the discharge of their duties, and that it was very seldom that he had occasion so to do. On the other hand, the commissioner and the chief clerk testified, and their testimony was not contradicted, that the roll was in their custody and that they were responsible for its keeping.

3. It is an officer who "fraudulently takes away, or withdraws, or destroys any such record or document," and he only, that may become guilty of the offense denounced by this section. The words "takes away and withdraws" in this statute must be construed with the word "destroys," under the maxim, "Noscitur a sociis," to mean a taking away or withdrawal whereby some injury is intended, attempted, or inflicted, either upon the record or document withdrawn, or upon some one who has an interest in it or is entitled to use it in the public office where it is deposited. The use of these words in the statute does not make, and was not intended to make, a withdrawal or removal which in no way interferes with the lawful use of the record or document in its proper place, and in no way injures or changes it, a crime. Hence the removal of the Creek roll from the office and the making of a copy of it nights and Sundays, followed by its restoration without change or injury, was not a violation of this section of the statute unless the defendant performed these acts "fraudulently." There are in the indictment averments that he un-

lawfully and feloniously and fraudulently, and with intent to defraud, removed and withdrew the roll with the intent to make a copy thereof. But he is not liable to punishment under this statute for the removal or withdrawal of the roll unlawfully or feloniously unless he did so fraudulently, and there can be no fraud where there is no endeavor or intent to injure or alter a right or interest of any one, and where no right or interest of any one is in fact injured or altered. One who does an act whereby he neither intends nor attempts to injure the right or interest of any one, and whereby he does not in fact injure or alter the right or interest of any one, cannot do that act fraudulently. Bigelow on Fraud, 5.

Where the words of the statute do not "fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute an offense intended to be punished," an indictment in the words of the statute is insufficient. The crime must be charged with precision and certainty, and every ingredient of which it is composed must be accurately and clearly alleged. To this end facts must be stated, not conclusions of law alone. The averment that an act innocent in itself, but criminal if fraudulently done, was done "fraudulently" or with intent to defraud, is but a bald conclusion of law and is futile. A crime is made up of acts and intent, and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances. United States v. Cook, 17 Wall. 168, 174, 21 L. Ed. 538; United States v. Cruikshank, 92 U. S. 542, 558, 23 L. Ed. 588; United States v. Carll, 105 U. S. 611, 612, 26 L. Ed. 1135; Evans v. United States, 153 U. S. 584, 587, 14 Sup. Ct. 934, 38 L. Ed. 830. This indictment, as well as the proof under it, is fatally defective because it sets forth no facts or acts which indicate any attempt or intent of the defendant to injure or alter the rights or interests of any one by his withdrawing and copying of the roll, or any effect to injure or alter any such right or interest caused by the acts charged against him.

The United States had five Creek rolls, two in addition to the one withdrawn in the custody of the commissioner at Muskogee. The defendant's withdrawal of the roll in the Creek Indian Office during nights and Sundays did not interrupt public business, and it was not noticed at the time. His making of a copy and the subsequent sale of copies of the roll deprived the government of no revenue, because it was not making copies for sale or for fees. The roll was a public document deposited in a public office. It had been made under the authority of a public law for the benefit of the Creek Indians and their successors in interest. It was a link in the chain of the title of each allottee to his allotment. Its publication was a patent protection against the secret machinations of those who alone had the advantage of access to it, and against possible frauds upon the Indians, and it was beneficial rather than deleterious. No law had been enacted and no public policy had been established which forbade the copying and publication of this roll, and a fictitious fraud, which is but the fanciful figment of the imagination, may not be lawfully conceived therein

by the courts in order to punish one for an act which was not a viola-tion of the statute under which he was arrested and tried.

The judgments of the courts below must be reversed, and the case must be remanded to the proper court with instructions to quash the indictment and discharge the defendant.