## POSNER v. INSURANCE CO. OF NORTH AMERICA.

(District Court, S. D. New York. July 3, 1924.)

1. **Insurance ⬤⟹419—Loss held not within terms of policy.**

A policy insuring sample trunks of a commercial traveler and their contents "against any and all the risks and perils of fire, lightning, navigation and transportation while in the custody of any railroad, express, transfer and/or transportation company, and/or of any steamship or steamboat, and against loss or damage by fire or lightning while in automobiles or in any hotel, * * *" *held* not to cover a loss by flood when the trunks were in the custody of insured in a hotel to which he had them transported.

2. **Insurance ⬤⟹146(3)—Unambiguous language of policy cannot be extended by construction.**

While a policy is to be construed liberally in favor of assured where its language is clear and unambiguous and reasonable and intelligent men could not differ as to their meaning it cannot be extended by construction.

3. **Insurance ⬤⟹419—The words "in the custody of," in a policy, imply responsibility of the custodian.**

The words "in the custody of," in a policy, imply guardianship, and necessarily carry with them an implication of responsibility of the custodian.

At Law. Action by Hyman P. Posner against the Insurance Company of North America. Trial to court, and judgment for defendant.

Herman Kahn, of New York City, for plaintiff.

Bigham, Englar & Jones, of New York City (Arthur W. Clement, of New York City, of counsel), for defendant.

ATWELL, District Judge. [1] On the 2d day of April, 1921, the defendant issued to the plaintiff a policy of insurance in the sum of $15,000 to safeguard his trunks and samples of furs, "in charge or control of two salesmen, traveling in behalf of the assured, against any and all the risks and perils of fire, lightning, navigation, and transportation (except as hereinafter provided), while in the custody of any railroad, express, transfer and, or, transportation company, and/or of any steamship or steamboat, and against loss or damage by fire or lightning while on automobiles, or in any hotel, dwelling and/or business building, excepting theaters and opera houses." The loss was limited to $8,500 on goods insured in charge of any one salesman.

A jury was waived, and an agreement was entered into covering the formal necessities of the complaint; further:

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"V. That on the 3d day of June, 1921, in the afternoon, the plaintiff, while so on the road as a traveling salesman, arrived, by railroad, at the Union Station at the city of Pueblo, state of Colorado, and had with him in his charge and under his control said two trunks containing said merchandise.

"VI. That, at said railroad station, the said railroad at the plaintiff's direction delivered said trunks and their said contents to the Union Depot Baggage & Transfer Company, which is a transfer and transportation company within the meaning of said policy, and said transfer company, for a good and valuable consideration, agreed to transport said property from the railroad station to the Vail Hotel, and later to transport said property back from the Vail Hotel to said railroad station; that checks in two parts were issued by said transfer company to the plaintiff, the upper part covering said transportation from the railroad station to the Hotel Vail, which part plaintiff surrendered to the transfer company when his trunks were left at the Hotel Vail, and the lower part covering said transportation from the Hotel Vail to the railroad station; and attached hereto are copies of such lower part of said checks, issued by said transfer company, marked Exhibits B and C (and the originals shall be submitted to the court herewith).

"VII. That thereafter, and on the same afternoon, said transfer company transported said trunks and contents to the Vail Hotel in said city of Pueblo, Colo., and physically left the same at said Vail Hotel, and said trunks and their contents were placed in the sample room at said Vail Hotel for the purpose of being exhibited thereafter, by the plaintiff, to prospective customers, but, at the time of their loss and damage, as hereinafter set forth, said trunks had not been unpacked.

"VIII. That thereafter, and on the same afternoon, learning that the waters of the Arkansas river at said city had begun to rise, the plaintiff notified by telephone the said transfer company to transport back said property from the Vail Hotel to said railroad station, and said transfer company agreed to do so immediately, and by direction of the plaintiff said property was taken from said sample room of said hotel by employees of this hotel, and placed in the lobby, and later in the kitchen of the hotel, near an exit to said building; but, at the time of the loss and damage, as hereinafter set forth, said transfer company had not yet resumed physical possession of the said property, and said property at said time was in said kitchen of said Vail Hotel.

"IX. That thereafter, while said trunks and said contents were so in said kitchen of the Vail Hotel, the waters of the Arkansas and surrounding rivers rose and flooded the city and submerged said lobby and injured and damaged said trunks and the said merchandise in the total sum of $6,750, and that the plaintiff suffered and sustained damage and loss in the said amount.

"X. That the plaintiff has duly filed with the defendant all notices and proofs of loss required by the said policy, except in so far as they have been waived by the defendant, and that the plaintiff has duly performed and complied with all the terms and provisions of said policy by him to be performed, except as the same have been waived by defendant, and that payment has been duly demanded and no part thereof paid."

Both plaintiff and defendant move for a verdict.

The reading of the contract is easy. It insured plaintiff against all sorts of risks and perils of "fire, lightning, navigation, and transportation (except as hereinafter provided), while in the custody of any railroad, express, transfer and/or transportation company, and/or of any steamship or steamboat." Also against any loss or damage by fire or lightning while on automobiles, or in any hotel, dwelling and/or business building, excepting theaters and opera houses. In other words, it made a difference between transportation companies or utilities, such as railroad, express, transfer and transportation, steamship, and steamboat, and a single or individual automobile and hotel, dwelling, business building, theater, and opera houses. Of the

last class the defendant only agreed to assure the plaintiff against such damage or loss as he might sustain by fire or lightning, while in the first class it insured the plaintiff against all perils, whether by fire or lightning or navigation or transportation. It is contended by the plaintiff that the entire purpose of the contract was to hold the plaintiff harmless, within the limits of the policy, for transportation casualties; that it was the manifest intention of the parties that any bona fide loss of the plaintiff's samples, while being transported for the purposes of exhibition from and to his home, should be paid for by the defendant. In support of his contention he calls attention to the fact that he applied to the defendant for insurance upon his property "upon such proposed trip"; that, also, on the back of the policy and on the top of the face of it are the words "Commercial Traveler's Form"; that the property was lost because of one of the "risks and perils of transportation."

[2] It may be assumed that the language and wording of a policy of insurance, being that of the company, should be interpreted broadly and liberally in favor of the assured. Rickerson v. Hartford Ins. Co., 149 N. Y. 307, 43 N. E. 856; Kratzenstein v. Western Assurance Co., 116 N. Y. 54, 22 N. E. 221, 5 L. R. A. 799; Northrup v. Railway Passenger Assurance Co., 43 N. Y. 516, 3 Am. Rep. 724; Columbia Trust Co. v. Norske Lloyd Ins. Co., 100 Misc. Rep. 550, 166 N. Y. Supp. 915; Primrose v. Casualty Co. of America, 232 Pa. 210, 81 Atl. 212, 37 L. R. A. (N. S.) 618; Guarantee Co. v. Mechanics' Saving Bank & Trust Co., 80 F. 765, 26 C. C. A. 146; Silverstein v. Commercial Casualty Ins. Co., 237 N. Y. 391, 143 N. E. 231; Paskusz v. Philadelphia Casualty Co., 213 N. Y. 32, 106 N. E. 749, Ann. Cas. 1915A, 652. None of these decisions can be construed to mean that, where there is no ambiguity and no lack of intelligibility, and where there is a perfect clearness of expression in the written contract, the court shall interpolate something that the parties themselves did not insert. Where reasonable and intelligent men on reading a contract could not and would not honestly differ as to its meaning, there is to be no solution at the hands of a court. The parties themselves have entered into the contract. By it they must abide. The case of Northrup v. Railway Passenger Assurance Co., 43 N. Y. 516, 3 Am. Rep. 724, allowed a recovery under a policy which insured against accidents while the insured was "traveling by public or private conveyance," even though the accident was received while insured was walking along the street from one steamboat landing to the railway station where the insured intended to board a train for the continuation of her journey. The decision may frankly be said to express the extreme limit of the liberal construction theory.

There is no such necessity in the present case. The sample trunks had been delivered to the plaintiff at his hotel. They were in his possession. They were not, in the slightest sense, "in the custody" of any railroad, express, transfer, or transportation company, but they were, in fact, in the possession of the plaintiff "in a hotel"—the hotel that the plaintiff had selected. The insurance company did not see fit, for the premium charged, to save the plaintiff from loss under

those conditions. Custody of the insured article is often of vast importance.

Again, the loss was occasioned not by the act of any person, but by an act of God. The samples were damaged by the flood of waters which swept through the city of Pueblo at an unexpected moment and in an unexpected volume, and it therefore may safely be said not to have been a loss due to any risk or peril of transportation.

[3] The words "in the custody of" imply guardianship, and necessarily carry with them an implication of responsibility of the custodian. 17 Corpus Juris, p. 442; Martin v. U. S., 168 F. 198, 93 C. C. A. 484; Leventhal v. Home Ins. Co., 32 Misc. Rep. 685, 66 N. Y. Supp. 502; Bryce v. Lorillard Fire Ins., 55 N. Y. 240, 14 Am. Rep. 249; Krohnberg v. Federal Ins. Co. (Sup.) 171 N. Y. Supp. 169; Annapolis, etc., Railroad v. Baltimore Fire Ins. Co., 32 Md. 37, 3 Am. Rep. 112; British America Assurance Co. v. Miller, 91 Tex. 414, 44 S. W. 60, 39 L. R. A. 545, 66 Am. St. Rep. 901; Fidelity & Deposits Co. v. Panitz, 142 Md. 300, 120 Atl. 713.

It seems to me that the language of the policy is plain. To write something else into it would not be enforcing it, but would be remaking it.

Judgment for the defendant.