## UNITED STATES v. MUSGRAVE et al.

(District Court, D. Nebraska, Omaha Division. December 3, 1923.)

No. 3168.

1. **Intoxicating liquors** ⬤⟶249—**Prohibition agent not "civil officer," to whom search warrant may be issued.**

A prohibition agent, appointed under National Prohibition Act, § 38, is not a "civil officer," within title 2, § 2, Rev. St. § 1014, and Act June 15, 1917, tit. 11, §§ 6, 7 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼f, 10496¼g), authorizing the issuance of search warrants only to a "civil officer" of the United States duly authorized to enforce any law thereof, or to a person so duly authorized by the President of the United States, in view of Act Nov. 23, 1921, § 6.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Civil Officer.]

2. **Searches and seizures** ⬤⟶3—**Statute relating thereto strictly construed.**

In construing Act June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼a et seq.), relating to search warrants, no intendment should be indulged in other than the words used clearly disclose, and a warrant issued thereunder should be quashed, unless issued in all respects and particulars as authorized.

3. **United States** ⬤⟶35—**Status of prohibition agent not affected by approval of appointment by Secretary of the Treasury.**

Congressional acts authorizing Commissioner of Internal Revenue to appoint prohibition agents, necessarily exclude a similar power on the part of the Secretary of the Treasury; hence the status of a prohibition agent, appointed by Commissioner of Internal Revenue, is not affected by approval of appointment by the Secretary of the Treasury.

4. **United States** ⬤⟶35—**Methods by which inferior federal officers become such.**

The only ways in which inferior officers of the United States can become such are by appointment by the President, the courts, or the heads of departments.

5. **Intoxicating liquors** ⬤⟶244—**Provisions of National Prohibition Act relating to search warrants held exclusive.**

The provisions of the National Prohibition Act concerning the issuance of search warrants, under the limitations provided, are exclusive; hence, in a case thereunder, a search warrant cannot be issued, under Rev. St., § 3462 (Comp. St. § 6364).

James Musgrave and another were indicted for violating the prohibition law. On defendants' motion to suppress evidence obtained under an alleged illegal search warrant. Motion sustained.

James C. Kinsler, U. S. Atty., of Omaha, Neb.

E. D. O'Sullivan and Geo. N. Mecham, both of Omaha, Neb., for defendant.

WOODROUGH, District Judge. It is complained that the search warrant in this case was void. The United States commissioner, on probable cause, issued and directed it to one Samardick, a general prohibition agent under the Commissioner of Internal Revenue, whose appointment, however, by the Commissioner of Internal Revenue is shown to have been approved by the Secretary of the Treasury. The contention of the defendant is that the approval of the Secretary of the Treasury of the appointment was without authority of law, because Congress had vested the appointment in the Commissioner alone. There is no law requiring or authorizing any approval by the Secretary.

The contention is specifically that the general prohibition agent was not a civil officer of the United States, because no head of a department was authorized to appoint him, and the United States commissioner, having no power under the law to issue a search warrant to any other person than a civil officer of the United States, could not issue it to an incumbent whom Congress directed to be appointed by the Commissioner of Internal Revenue.

[1] The defendants insist that the power to issue search warrants in the enforcement of the National Prohibition Act is strictly limited by the provisions of the Espionage Act of June 15, 1917· (40 Stat. p. 217 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v]), and that the commissioner can issue the warrants only to a civil officer of the United States in the constitutional sense; i. e., to an officer appointed by the President, or by the courts, or by the head of a department. On behalf of the government, attention was called to the fact that the practice is general, and probably universal, for United States commissioners to issue search warrants to the national prohibition agents, and a considerable list of cases is presented, both in the District Court and appellate courts, wherein such search warrants, although attacked and frequently defeated on other grounds, have not excited any comment by the courts as to these particular contentions. In re Search (D. C.) 284 Fed. 914; Diligannis v. Mitchell (D. C.) 279 Fed. 131; In re Alpern (D. C.) 280 Fed. 432; Salata v. U. S. (C. C. A.) 286 Fed. 125; Ryan v. U. S. (C. C. A.) 285 Fed. 734; Giles v. U. S. (C. C. A.) 284 Fed. 208; U. S. v. Boasberg (D. C.) 283 Fed. 305; Petition of Barber (D. C.) 281 Fed. 550; U. S. v. Mitchell (D. C.) 274 Fed. 128; U. S. v. Metzger (D. C.) 270 Fed. 291; U. S. v. Vatune (D. C.) 292 Fed. 497.

The government further contends that the National Prohibition Act and acts supplemental thereto, considered together with the provisions of the Espionage Act, should convince that the designation "civil officer of the United States," in the Espionage Act, ought to be considered in the popular sense, rather than in the constitutional sense, and so should include prohibition agents. U. S. v. Syrek (D. C.) 290 Fed. 820; U. S. v. Daison (D. C.) 288 Fed. 199; U. S. v. Keller (D. C.) 288 Fed. 204.

To me it appears clear that many provisions of the National Prohibition Act (41 Stat. 305) evince the will of the Congress to have the act broadly and liberally applied to accomplish the suppression of the liquor traffic. That spirit runs through the entire act, even at the risk of duplicating penalties, impositions, and restrictions upon the use of property owned by innocent persons, and by retaining in force incongruous older laws. But, when we come to the provisions concerning search warrants, it is in those provisions alone, so far as I recall, that the extension of powers for the enforcement of the act includes words of express limitation. Section 2, title 2, of the National Prohibition Act, provides:

"Section 1014, * * * Revised Statutes of the United States [which is the section designating the magistrates who may issue search warrants], is hereby made applicable in the enforcement of this act. Officers mentioned in

said section 1014 are authorized to issue search warrants under the limitations provided in title XI of the act approved June 15, 1917."

The language referred to in title 11 is as follows:

"Sec. 6. If the judge or commissioner is thereupon satisfied * * * he must issue a search warrant, signed by him with his name of office, to a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof, or to a person so duly authorized by the President of the United States commanding him forthwith to search. * * * Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼f.

"Sec. 7. A search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution." Section 10496¼g.

The form of these provisions demonstrates that, notwithstanding the determination of Congress, reflected throughout the entire act, to use to the full the power of the government to suppress the liquor traffic, great pains were taken to introduce no novel or extraordinary methods of searches and seizures. On the contrary, Congress expressly reaffirms its limitations upon search warrants which are provided in the Espionage Act. The wording of the National Prohibition Act reflects the same spirit of caution about writs of search and seizure that has always characterized our law. Such writs are necessary in the execution of governmental power, and the right to their use is fundamental and lawful; but the courts rarely exercise a more vitally important function than to preserve absolutely inviolate every constitutional and legislative safeguard against the abuse of such process.

[2] Therefore, in construing the provisions of the Espionage Act, no intendment should be indulged in other than the words used clearly disclose, and the search warrant should be quashed unless issued in all respects and particulars as authorized by law and within its constitutional limitations. Liberal application called for in the general provisions of the National Prohibition Act has no place, and is not intended to have any place, in the consideration and interpretation of the search warrant law. Such is the manifest intention of Congress. Those writs are to issue under the limitation provided in the Espionage Act, and not otherwise.

The clearly stated limitation concerning the issuance of search warrants is that the commissioner "must issue a search warrant to a civil officer of the United States duly authorized to assist in enforcing any law thereof," and the inquiry simply is whether the prohibition agent is "a civil officer of the United States duly authorized to assist in enforcing any law thereof." The provision of the National Prohibition Act under which the agent, Samardick, was appointed is as follows:

"Sec. 38. The commissioner of Internal Revenue and the Attorney General of the United States are hereby respectively authorized to appoint and employ such assistants, experts, clerks, and other employees * * * as they may deem necessary for the enforcement of the provisions of this act."

[3] The agent, Samardick, has been appointed by the Commissioner of Internal Revenue, and the appointment approved by the Secretary of the Treasury. Inasmuch as the acts of Congress conferred the power to make appointments upon the Commissioner of Internal Revenue, that power on the part of the Secretary of the Treasury in that

behalf was necessarily excluded. The action of the Secretary of the Treasury was entirely without authority of law, and could not change the character and nature of the agent's employment.

In the case of Burnap v. United States this same situation was presented before the Supreme Court of the United States. Burnap (the appellant) appears to have been appointed by the Secretary of War, but the only lawful power to appoint him was found to be in the Chief of Engineers in charge of public buildings and grounds, according to the act of Congress. The Supreme Court therefore determined his status according to the act of Congress, and declared the appointment by the Secretary of War, instead of by the Chief of Engineers, was without authority in law. Burnap v. U. S., 252 U. S. 512, 40 Sup. Ct. 374, 64 L. Ed. 692.

Exactly the same decision was made by the Supreme Court of the United States in the case of United States v. Mouat, 124 U. S. 303, 8 Sup. Ct. 505, 31 L. Ed. 463. There the appointment of a paymaster's clerk was in fact approved by the Acting Secretary of the Navy, but the court said:

"There is no statute authorizing the Secretary of the Navy to appoint a paymaster's clerk, nor is there any act requiring his approval of such an appointment; * * * the claimant, therefore, was not an officer, either appointed by the President or under authority of any law."

It therefore appears clear that the status of the prohibition agent, as to his employment under the government, can in no wise be affected by the fact that his appointment was approved by the Secretary of the Treasury. The inquiry then narrows down as to whether the prohibition agent was "a civil officer of the United States," to whom the commissioner was empowered to issue and direct a search warrant. A long line of cases establishes that whether an incumbent is an officer or employee is determined by the manner in which Congress has specifically provided for the creation of the several positions, their duties, and appointments thereunder.

[4] It appears on reference to the Constitution of the United States that there are only three ways in which inferior officers of the United States can become such. They may be appointed by the President, or any of the courts of law, or by the heads of departments. Section 2 of article 2 of the Constitution provides in part as follows:

"But the Congress may by law vest the appointment of such inferior officers as they think proper in the President alone, in the courts of law or in the heads of departments."

None of the thousands of other persons through whom the government functions can in any strict sense be held to be officers of the United States. They are agents, employees, assistants, contractors, etc.; but they are not, strictly speaking, officers. This has been settled by a long line of decisions cited in the opinion of the Supreme Court of the United States in Burnap v. U. S., supra, including the following: U. S. v. Hartwell, 6 Wall. 385, 18 L. Ed. 830; U. S. v. Moore, 95 U. S. 760, 24 L. Ed. 588; U. S. v. Perkins, 116 U. S. 483, 6 Sup. Ct. 449, 29 L. Ed. 700; U. S. v. Mouat, 124 U. S. 303, 8 Sup. Ct. 505, 31 L. Ed. 463; U. S. v. Hendee, 124 U. S. 309, 8 Sup.

Ct. 507, 31 L. Ed. 465; U. S. v. Smith, 124 U. S. 525, 8 Sup. Ct. 595, 31 L. Ed. 534; Auffmordt v. Hedden, 137 U. S. 310, 11 Sup. Ct. 103, 34 L. Ed. 674; U. S. v. Schlierholz (D. C.) 137 Fed. 616; Martin v. U. S., 168 Fed. 198, 93 C. C. A. 484.

As the United States commissioner is limited in his powers, so that he cannot lawfully issue such warrants, except to a "civil officer of the United States," and the prohibition officer in question is clearly not a civil officer in any strict or constitutional sense, the real question here is whether the term "civil officer" may be given a popular and less strict meaning. I have before me opinions of the learned judges in Michigan and Massachusetts, United States v. Syrek, United States v. Daison, and United States v. Keller, supra, reflecting their conclusion that the issuance of the writ was justified, notwithstanding their conclusion that the prohibition agent is not a "civil officer of the United States" in the strict or constitutional sense; but I find myself unable to concur. I am persuaded that a strict and literal observance of all limitations incorporated in the law concerning the issuance of search warrants is not only in accordance with the historical tradition and spirit of our law, but it appears equally clear that Congress, in the Volstead Act itself, imperatively commands the maintenance of the specified limitations. Not only do all the authoritative adjudications of the United States Supreme Court that I have read emphasize and uphold the constitutional inhibitions against unreasonable searches, and surely unlawful searches are unreasonable, but the last expression of Congress in the supplemental act to the National Prohibition Act confirms me in my conclusion. By the Act of November 23, 1921 (42 Stat. 223), section 6 of the act supplemental to the National Prohibition Act, Congress denounces unlawful searchings as criminal and provides drastic penalties therefor. It is probable that no greater hindrance to the effective and successful enforcement of the National Prohibition Act could arise than a persistent ignoring of the limitation put by law upon searches and seizures.

[5] Contention is made that authority for the search in this case can be found under section 3462 of the Revised Statutes (Comp. St. § 6364), which concerns the issuance of search warrants to internal revenue officers. The question is not now clearly before the court because the search warrant in question was not issued in compliance with this provision of the law; but I have given consideration to the contention and it is my conclusion that the provisions of the National Prohibition Act concerning the issuance of search warrants under the limitations provided are exclusive. It appears to me that, notwithstanding the powers conferred upon the Commissioner of Internal Revenue, his assistants, agents, and inspectors, both by the National Prohibition Act itself and the various acts referred to therein, it was the intention of Congress to retain and to maintain all the limitations upon the issuance of search warrants that are found in the Espionage Act, and to authorize no other searches for its enforcement than are found in the Espionage Act.

Such being the conclusion of the court, it is ordered that the motion to suppress the evidence obtained under the search warrant be sustained.