[L. A. No. 27150. In Bank. Apr. 18, 1963.]

HENRY CASTANEDA, Petitioner v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Frank C. Wood, Jr., for Petitioner.

No appearance for Respondent.

William B. McKesson, District Attorney, Harry Wood, Robert J. Lord and Harry B. Sondheim, Deputy District Attorneys for Real Party in Interest.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, as Amici Curiae on behalf of Real Party in Interest.

TRAYNOR, J.—By information petitioner was charged with possession of heroin in violation of Health and Safety Code, section 11500. His motion to set aside the information on the ground that the evidence against him was obtained by an illegal search and seizure was denied, and he now seeks prohibition to prevent his trial. (See *Badillo* v. *Superior Court*, 46 Cal.2d 269, 271 [294 P.2d 23].)

Evidence was presented at the preliminary hearing of the following facts: On November 21, 1961, Deputy Sheriff Copping of the narcotics detail of the Los Angeles sheriff's office and three other officers went to John Spade's house in Lynwood. They had no arrest or search warrant. Deputy Copping knew that Spade was a narcotics addict and had received information of narcotics traffic at his house. The of-

ficers arrived about 7:30 p.m. and put the house under surveillance. About 7:45 p.m. someone arrived in a car, entered the house, stayed about 15 minutes, and then drove away. About 8:30 p.m. two people arrived in a car, parked in the driveway, and entered the house. About 9 p.m. one officer went to the front door, another officer went to the back door, and Deputy Copping and the fourth officer went to the kitchen door at the side of the house. Through an open window, Deputy Copping saw Spade standing in the kitchen. His left sleeve was rolled up, and he had an eyedropper and hypodermic needle in his right hand. He concluded that Spade had just finished or was taking an injection of narcotics. While Deputy Copping was waiting for the other officers to get set, Spade opened the door, and Deputy Copping arrested him and entered the kitchen. Petitioner and a third person, Trejo, were present. From their appearance and behavior, Deputy Copping concluded that they were under the influence of narcotics. While the other officers stayed in the kitchen with petitioner and Trejo, Deputy Copping took Spade into another room. Spade told him that the heroin had all been shot up and that he had put the narcotics outfit back under the sink, where the officers found it. They arrested Spade, Trejo, and petitioner. Deputy Copping knew petitioner as a person who had been named by several addicts as their source of narcotics, and he had participated in the surveillance of petitioner's house over a period of several months.

The officers handcuffed petitioner before leaving Spade's house, and Deputy Copping asked him if he had any more narcotics at his house. He said he did not. "I asked him if we could look, and he asked me if I had a search warrant. I stated I did not have a search warrant, and I would not need one if he would give me consent, at which time he gave me consent. Q. What did he say? A. He said you could go ahead and look." Deputy Copping and one of the other officers took petitioner with them in their car and started toward his house at 305 West Bennett in Compton. Deputy Copping asked petitioner where he lived, and petitioner said that he lived at 1430 Tamarind Street in Compton. He was asked if he was sure, and then said "All right. You guys know where I live." When they arrived at 305 West Bennett, petitioner said, "I don't live here; I live over here," and pointed to 303 West Bennett. He knocked on the door, and his aunt let

him and the officers in. The officers asked petitioner's aunt if he lived there and she said, "No, he lives across the way." Petitioner said, "Mary, don't tell them nothing. Mary, don't tell them nothing."

The officers took defendant from 303 to 305 West Bennett, where a young girl was sitting with petitioner's four minor children. She told the officers that petitioner lived there. They asked petitioner again if he had any narcotics in the house, and he said, "All right, I will tell you where they are." Petitioner directed the officers to his mother's house at 1413 Tamarind Street and told them that there were narcotics on a rafter in the garage. The officers looked and found nothing. They then took petitioner back to 305 West Bennett and searched the house in his presence. They discovered a quantity of heroin, which was admitted in evidence at the preliminary hearing over objection to establish the corpus delicti of the crime charged.

██ Although it is not disputed that the officers had reasonable cause to arrest petitioner without a warrant when they discovered him at Spade's house, the search of petitioner's home cannot be justified as incidental to his arrest, "for it was at a distance from the place thereof and was not contemporaneous therewith. [Citations.]" (*People* v. *Gorg,* 45 Cal.2d 776, 781 [271 P.2d 469] ; *Tompkins* v. *Superior Court, ante,* pp. 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113].)

The People contend, however, that the evidence is sufficient to support the committing magistrate's implied finding that petitioner freely consented to the search of his home. ██ In *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852], we stated: "To protect his right to object to an unreasonable search or seizure a defendant need not forcibly resist an officer's assertion of authority to enter his home or search it or his person [citations], but if he freely consents to an entry or search, or voluntarily produces evidence against himself, his constitutional rights are not violated and any search or taking of evidence pursuant to his consent is not unreasonable. [Citations.] ██ Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances." (See also *People* v. *Burke,* 47 Cal.2d 45, 49 [301 P. 2d 241].) In the present case the testimony of Deputy Copping dispels any inference that might otherwise have been

drawn from petitioner's words of consent that he freely and voluntarily consented to the search of his home.

 Although not conclusive, "A circumstance of particular significance is a defendant's custody at the time of the request for his permission to search, for where he has submitted to arrest, or is in jail, he knows that he is virtually powerless to prevent the search. [Citations.]" (*People* v. *Gorg,* 45 Cal.2d 776, 782, fn. 2 [291 P.2d 469].) In the present case, petitioner was not only under arrest, but he was handcuffed at all times until he was finally taken to jail several hours after his arrest, and he had no choice but to go wherever the officers took him. He knew that the officers wished to search his home and that if they did so they would find evidence against him. He repeatedly attempted to lead the officers away from his home, and after these efforts failed, he was neither asked to nor did he express his consent that the search continue. These efforts make abundantly clear that petitioner did not freely and voluntarily consent to the search of his home. The most that can be inferred is that petitioner sought to placate the officers and hoped that by agreeing to the search of other premises, he would forestall the search of his home and the discovery of incriminating evidence. We do not condone petitioner's efforts to mislead the officers. It bears emphasis, however, that petitioner was under no duty to assist the officers in securing evidence against him. Since the search was not incident to his arrest, he had the right to have a magistrate determine whether there was reasonable cause to search his home and whether a search warrant should therefore issue. (*Chapman* v. *United States,* 365 U.S. 610, 613-616 [81 S.Ct. 776, 5 L.Ed.2d 828, 831-833]; *Johnson* v. *United States,* 333 U.S. 10, 13-15 [68 S.Ct. 367, 92 L.Ed. 436, 439-440]; *Agnello* v. *United States,* 269 U.S. 20, 32-33 [46 S.Ct. 4, 70 L.Ed. 145, 148-149, 51 A.L.R. 409, 413-414].) " 'Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.' " (*People* v. *Tarantino,* 45 Cal.2d 590, 594 [290 P.2d 505], quoting *McDonald* v. *United States,* 335 U.S. 451, 455 [69 S.Ct. 191,

93 L.Ed. 153, 158].) Petitioner did not forfeit that right by his efforts to mislead the officers. At the preliminary hearing the burden was on the prosecution to present substantial evidence of consent to the search (*Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23]), and it failed to discharge that burden.

Let the peremptory writ issue as prayed.

Gibson, C. J., Peters, J., Tobriner, J., and Peek, J., concurred.

SCHAUER, J., Dissenting—On the facts which are shown to have been known to the arresting officers I am of the view that the search was justified. The justifying facts appear to include the following items: (1) the criminal conduct of the petitioner's companions immediately preceding his arrest; (2) the behavior of petitioner himself at that time and following his arrest; (3) the information which the officers had that petitioner was an established trafficker in illegal narcotics; (4) the inferences that petitioner had supplied the drug which Spade had injected, and that as a regular supplier petitioner would have cached away a further stock of the contraband. These are inferences which, I think, officers experienced and skilled in detecting and apprehending suppliers of illegal narcotics would properly have drawn from the above related probative facts.

Furthermore, I think it should occur to the officers that this petitioner would probably have an accomplice who, promptly following petitioner's arrest (and disappearance of the law enforcement officers), would remove and secrete or destroy any contraband which might otherwise be found in petitioner's home, or in any other place which might be conveniently available to him. Accordingly, such officers would deem it to be only diligent discharge of duty to immediately pursue the clues before them. This they did, expeditiously, intelligently and successfully.

For the reasons indicated I would discharge the alternative, and deny the peremptory, writ of prohibition.

McComb, J., concurred.