[Crim. No. 9143.   Second Dist., Div. Two.   Jan. 23, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE ARTHUR RUHMAN, Defendant and Appellant.

Gerald L. Rosen, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendant appeals from the judgment of conviction entered against him following a nonjury trial wherein he was charged with petty theft following a prior felony conviction. (Pen. Code, § 667.) He had suffered a

prior conviction of the same charge. Four other prior felony convictions also were alleged and proved.

The sole question presented on this appeal is whether the trial court erred in receiving into evidence the items of stolen property found in defendant's residence and his admissions relating thereto. The evidence supporting the judgment may be summarized as follows:

On the evening of January 21, 1963, Mrs. Coleman hung various items of freshly washed clothing upon a rack located in a carport adjacent to her residence. The following morning as she was leaving for work she discovered that all the clothing was missing. Before she had reported the loss, she was called to the Hollywood police station where she was able to identify the stolen items as her own.

Officer Baker of the Los Angeles Police Department testified that at approximately 3:50 a.m. on the morning of January 22, 1963, he and a fellow officer were patrolling the area to which they had been assigned by reason of a series of burglaries that had recently been committed in the vicinity. There was very little pedestrian or vehicular traffic in this 6-or-8-block radius at this hour; hence, it was somewhat unusual to see anyone driving around. The officers were proceeding south on Madison Avenue when they observed defendant's vehicle as it turned onto Madison Avenue from Burns Avenue headed in a northerly direction. Although their patrol car was unmarked, it had a red spotlight. As defendant had just completed his turn, and in a position from which he almost certainly saw the officers' car, he "placed his vehicle in reverse gear, and at a high rate of speed backed down onto Burns Avenue again and proceeded westbound on Burns at a very high rate of speed."

The officers immediately pursued defendant, signalling him to stop. When he finally came to a stop on North Vermont Avenue, the officers observed that he fitted the description of the party suspected of committing the recent burglaries in the area. He identified himself, and, in response to the officers' questions, stated that he had been arrested "[o]nce, for GTA." The officers continued to interrogate defendant while seated in the police car awaiting a radio report they had requested concerning him. When received, the report indicated that "he had done time for burglary and other felonies."

In response to various inquiries, defendant stated that he lived in Glendale and was on his way home. When asked why

he had chosen this particular route, he first stated that he had been driving on Hoover Street ''to get something to eat at Norm's.'' When the officers asked him why he hadn't gone to a restaurant nearer than Norm's, defendant mentioned a Pearl's Café which he said was in the same area. Later he stated that he had been driving on Virgil or Vermont rather than Hoover.

In view of these several conflicting statements and his false statements regarding his criminal record, the officers asked him whether or not he had any weapons in his car. He answered in the negative. The officers then asked him if they might search his car and he answered affirmatively.

A search of the car disclosed, *inter alia*, a flashlight, a tool box with another's name on it that had been partially rubbed out, apparently with steel wool, and various other tools such as drills, hacksaws, vise grips and water pump grips. Defendant at first stated that he used these tools in his work as a carpenter. However, when the officers pointed out that these were *metal* working tools rather than *carpentry* tools, he stated that his carpentry tools were at his residence and that he used these tools to work on his car.

The officer also testified that there were fresh brass shavings on one of the pair of grips and that in the area recently there had been ''seven or eight what we'd call pipe wrench burglaries where this type of grip had been used to break the door handle of residences.'' Finally, one of the hacksaws was ''brand new,'' the price still written on it; and for this defendant could not account.

On the basis of the recited circumstances, defendant was arrested on suspicion of burglary. His contention that this arrest was not based upon probable cause manifestly is without merit.

Penal Code section 836 states: ''A peace officer ... may without a warrant, arrest a person; .... 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed.'' ■ As stated in *People* v. *Ingle*, 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577], cert. den., 364 U.S. 841 [81 S.Ct. 79, 5 L.Ed.2d 65]: ''There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest

and strong suspicion that the person is guilty of a crime. [Citations.]''

In the instant case, defendant's evasive and irregular tactics, when he came upon the officers' vehicle at an unusual time and location, clearly gave the officers reasonable grounds to pursue and halt him for investigative purposes. (*People* v. *Mickelson*, 59 Cal.2d 448, 454 [30 Cal.Rptr. 18, 380 P.2d 658].) In addition, unlike the *Mickelson* case, the evidence here discloses that defendant not only consented to a search of his car, but, in addition, his false and inconsistent statements regarding his criminal record and his activities in the area might well have been sufficient to warrant a search thereof even in the absence of consent. The discovery of the various items found therein, combined with his further inconsistent explanations thereof, gave the officers ample grounds for suspecting him to have been guilty of criminal conduct and placing him under arrest.

Following his arrest, defendant was questioned further by Officer Yandle, a detective assigned to the burglary detail. This officer testified that, in discussing the actions of defendant which had led to his arrest, defendant was asked if he had any property in his home that he ''might be afraid for us to look at.'' Defendant stated that he did not. He was then asked, ''Would you mind if we went over to your residence and looked through it?'' The defendant replied, ''No.''

A search of defendant's residence disclosed the items of stolen clothing that form the basis for the present action and they were still damp. When asked where he had gotten them, defendant directed the officers to Mrs. Coleman's residence and stated, ''In the carport on a rack was where all those wet garments were that I took, and took them home, put them in my house and then drove back to Hollywood.''

Although defendant did not testify in his own defense, he stated by way of *voir dire* examination that the officers had never asked his permission to search either his car or his residence. Recognizing, however, that such testimony would merely create a conflict in the evidence, he now urges that the recent decisions in *Castaneda* v. *Superior Court*, 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641], and *People* v. *Haven*, 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927], require us to hold that as a matter of law voluntary consent may not be given when a defendant is in custody following his arrest.

We do not so read these decisions. Actually both of them appear to reaffirm the basic rules that evidence obtained by means of a search that has been voluntarily consented to is admissible in evidence, that the issue of voluntariness is one of fact which must be determined in the light of all the surrounding circumstances, and the fact that the defendant is under lawful arrest at the time his consent allegedly was given is merely one particularly important circumstance to be considered. In *Castaneda* v. *Superior Court, supra,* it is expressly stated (pp. 442, 443) :

''The People contend, however, that the evidence is sufficient to support the committing magistrate's implied finding that petitioner freely consented to the search of his home. In *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852], we stated: 'To protect his right to object to an unreasonable search or seizure a defendant need not forcibly resist an officer's assertion of authority to enter his home or search it or his person [citations], but if he freely consents to an entry or search, or voluntarily produces evidence against himself, his constitutional rights are not violated and any search or taking of evidence pursuant to his consent is not unreasonable. [Citations.] Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.' (See also *People* v. *Burke,* 47 Cal.2d 45, 49 [301 P.2d 241].) In the present case the testimony of Deputy Copping dispels any inference that might otherwise have been drawn from petitioner's words of consent that he freely and voluntarily consented to the search of his home.

''Although not conclusive, 'A circumstance of particular significance is a defendant's custody at the time of the request for his permission to search, for where he has submitted to arrest, or is in jail, he knows that he is virtually powerless to prevent the search. [Citations.]' (*People* v. *Gorg,* 45 Cal.2d 776, 782, fn. 2 [291 P.2d 469].) In the present case, petitioner was not only under arrest, but he was handcuffed at all times until he was finally taken to jail several hours after his arrest, and he had no choice but to go wherever the officers took him. He knew that the officers wished to search his home and that if they did so they would find evidence against him. He repeatedly attempted to lead the officers away from his home and after these efforts failed, he was neither asked to nor did he express his consent that the search continue. These efforts made abundantly clear that

petitioner did not freely and voluntarily consent to the search of his home. The most that can be inferred is that petitioner sought to placate the officers and hoped that by agreeing to the search of other premises, he would forestall the search of his home and the discovery of incriminating evidence.''

In *People* v. *Haven, supra,* the court stated (pp. 718-719): ''It is true that there is language in several cases to the effect that a search or seizure made pursuant to consent is valid even though the consent was given immediately after *an unlawful entry or arrest.* [Citations.] In most of these cases, however, the language was not necessary to the decision. It appears to reflect a mechanical extension of the rule that probable cause to arrest or a warrant is not required to justify a search when consent to the search is given before the officer enters and searches or makes an arrest. [Citations.] *A search or seizure made pursuant to a valid consent before any illegal police conduct occurs is obviously not a product of illegal conduct.* A search and seizure made pursuant to consent secured immediately following an *illegal* entry or arrest, however, is inextricably bound up with the illegal conduct and cannot be segregated therefrom. Accordingly, the language in the cited cases to the contrary is disapproved.'' (Italics added.)

In the instant case, since defendant's initial arrest was legal, the consent subsequently given obviously cannot be ''inextricably bound up with [any] illegal conduct'' and hence need not be ''segregated therefrom.'' Unlike the *Castaneda* case, the officer's testimony in the case at bar does not itself in any fashion disclose that defendant's consent was involuntary or given under submission to any express or implied assertion of authority or in any attempt to forestall a search. In fact, the situation here presented makes apposite the following observation made by the court in *People* v. *Michael, supra,* 45 Cal.2d 751, 754, in regard to a parallel situation:

''Such inquiries, although courteously made and not accompanied with any assertion of a right to enter or search or secure answers, would permit the criminal to defeat his prosecution by voluntarily revealing all of the evidence against him and then contending that he acted only in response to an implied assertion of unlawful authority.''

Certainly we may not assume that if the defendant had declined to authorize a search of his residence, the offi-

cers nevertheless would have proceeded to conduct such a search without first having obtained a proper warrant therefor. Since defendant obviated the need for such warrant by his voluntary consent to the search, he may not now be heard to complain of its absence.

The judgment is affirmed.

Fox, P. J., and Roth, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 18, 1964.