[S. F. No. 22115.   In Bank.   Jan. 4, 1966.]

SIMON SIERRA SOLIS et al., Petitioners, v. THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Cominos & Shostak, Lawrence Shostak and Eugene Epstein for Petitioners.

Herman W. Mintz, James Giller, David A. Himmelman and John D. Nunes, Public Defender (Alameda), and Richard M. Bryan, Assistant Public Defender, as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Edward P. O'Brien, Albert W. Harris, Jr., and Robert R. Granucci, Deputy Attorneys General, for Real Party in Interest.

McCOMB, J. — A writ of prohibition restraining the superior court from proceeding with the trial of defendants on charges of possession of narcotics (Health & Saf. Code, § 11500) was issued by the District Court of Appeal after

defendants' objections to the introduction of certain narcotics into evidence at their preliminary hearing were overruled.

*Facts:* Narcotics introduced into evidence against defendants were obtained in a search of their home conducted by police personnel pursuant to a duly issued search warrant.

The search started about 6 p.m., and apparently concluded about 8 p.m., on December 16, 1964. The sun set before 6 p.m. on that date in the latitude here involved, and both parties are agreed that the search was technically in the nighttime.

The search warrant was issued by a magistrate the same day upon an affidavit filed by a narcotic agent, and authorized search ''at any time of the day or night.''

The affidavit states: ''2. That on or about October 21, 1964, affiant and Mr. X, a confidential informant of the Bureau of Narcotics Enforcement whose identity is not disclosed because to do so would. endanger his personal safety, discussed with one RUDY LOPEZ in the City of Salinas, the purchase of heroin; the said RUDY LOPEZ informed affiant that he knew where heroin could be purchased and directed affiant and Mr. X to drive him to 108 Hebbron Street, City of Salinas; upon arrival at 108 Hebbron Street, RUDY LOPEZ asked affiant how many papers of heroin he wished to buy at a price of Five Dollars ($5.00) per paper. Affiant gave RUDY LOPEZ Ten Dollars ($10.00) and told him he wanted two (2) papers of heroin; affiant observed LOPEZ after delivery of the money walk to a house located on the premises at 108 Hebbron Street known to affiant as the residence of SIMON SOLIS, said house being one of three buildings located at 108 Hebbron and being the most southerly building on said premises; affiant observed LOPEZ leave the house about five minutes after he entered and return to where affiant was awaiting Mr. X a short distance away on the west side of Hebbron Street; LOPEZ then delivered to affiant two (2) papers of heroin.

''That prior to and since October 21, affiant has observed known narcotics users call at the premises at 108 Hebbron Street known to him as the residence of SIMON SOLIS: That police officers of the City of Salinas and narcotics users have informed affiant that SIMON SOLIS is a distributor of narcotics.

''3. That affiant has and there is just, probable and reasonable cause to believe, and he does believe, that there are now

in the possession of SIMON SOLIS and in and upon the premises and building known and designated as and commonly called 108 Hebbron Street and described above, in the City of Salinas, County of Monterey, State of California, including all rooms and buildings used in connection with said premises and outbuildings adjoining the same and in a receptacle or safe therein, certain articles, items and property which constitute evidence which tends to show that a felony has been committed and that the said SIMON SOLIS committed said felony.

"4. That the said articles and property are described particularly as follows, to wit:

HEROIN AND OTHER CONTRABAND NARCOTICS."

■ *Question: Was the search warrant improperly issued?*

*No.* The affidavit did not specifically request that a warrant be issued for a day or night search, and it is contended that there was therefore no basis for issuance of a warrant which could be served during the nighttime.

Section 1529 of the Penal Code, which prescribes the form of a search warrant, provides that the warrant shall, in substance, state that the search is to be made *"in the daytime* (or at any time of the day or night, as the case may be, *according to Section 1533)."* (Italics added.)

Section 1533 of the Penal Code provides, *"On a showing of good cause therefor,* the magistrate may, in his discretion, insert a direction in the warrant that it may be served at any time of the day or night; in the absence of such a direction, the warrant may be served only in the daytime." (Italics added.)

In the present case the affidavit relates in detail narcotic transactions observed at defendants' premises since October 1964, particularly the sale of heroin, and indicates that defendants' residence was well known to police officers as a source of narcotics in the Salinas area.

It is common knowledge, at least to those engaged in law enforcement, that heroin is the most dangerous of the illicit drugs; that heroin pushers are among the most dangerous of drug peddlers; and that heroin pushers are as active at night as during the day and probably more so.

Accordingly, in view of the nature of the contraband, the affidavit shows good cause for issuance of a warrant that could be served during either the daytime or the nighttime,

and in issuing such a warrant the magistrate did not abuse his discretion.

The writ of prohibition is discharged.

Traynor, C. J., Tobriner, J., Peek, J., Mosk., J., and Burke, J., concurred.

PETERS, J.—I dissent.

The affidavit here involved did not justify the issuance of a warrant permitting a nighttime search. The warrant so providing was void. The pertinent code section requires a showing of "good cause" before such a warrant may issue. None was shown here.

The opinion of the District Court of Appeal, in this case, properly disposed of the issue. I adopt as part of my dissent the following portions of that opinion written by Mr. Justice Taylor of the First Appellate District, Division Two (*Solis* v. *Superior Court* (Cal.App.) 45 Cal.Rptr. 127, 128):

The crucial question is whether the affidavit legally justifies the court's warrant allowing the nighttime search and arrest made in this case. If the affidavit is not sufficient, the evidence upon which defendants are charged was obtained by an illegal search and seizure and cannot be relied upon in support of a criminal complaint (*People* v. *Reeves,* 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393]).

Prior to 1961, Penal Code section 1533 provided: "The magistrate must insert a direction in the warrant that it be served in the day-time, unless the affidavits are *positive that the property is on the person or in the place to be searched,* in which case he may insert a direction that it be searched at any time of the night or day." (Italics supplied.)

In 1961, section 1533 was amended to read as follows: *"On a showing of good cause therefor,* the magistrate may, in his discretion, insert a direction in the warrant that it may be served at any time of the day or night; in the absence of such a direction, the warrant may be served only in the daytime." (Italics added.)

Thus, whereas previous to 1961 the affidavit had to be positive that the item was on the person or property to permit a nighttime search, such a search is now permitted if "good cause" therefor is shown in the affidavit.

There are no California cases defining the use of the term "good cause" in section 1533. It is clear, however, from a

reading of that section, both before and after its 1961 amendment, that the Legislature was reluctant to approve night searches in the absence of some indication that a day search would not serve the required purpose. Although the 1961 amendment permits the issuing magistrate greater discretion in the matter, some reasonable showing must nevertheless be made to support a nighttime search.

Had the affidavit stated that known narcotic addicts frequented the premises at night or that defendants were more likely to be present during the night hours, the warrant might well have been justified. But the affidavit does not relate any acts occurring on the premises at night nor any necessity that the warrant be served at night. In fact, it does not request the issuance of a warrant serviceable at night. The bare allegation of a continuous pattern of serious criminal activity does not, as contended by the Attorney General, relate to the necessity of serving the warrant at night. It does not even present the issue to the magistrate.

*No* cause having been stated in the affidavit for the issuance of a warrant serviceable at night, we can only conclude that the affidavit was devoid of the *"good* cause" required under section 1533. The evidence upon which the information in this case was predicated having thus been obtained by an illegal search and seizure, the defendants' trial must be restrained (*Castaneda* v. *Superior Court,* 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641]; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 271 [294 P.2d 23]) and we need not consider the remaining issues raised in defendants' petition.

To the foregoing quoted portion of Justice Taylor's opinion, I wish to add: It should be emphasized that the affidavit does not mention or even hint that any of the offenses herein described occurred at night, or that there was any emergency. The main information relied on in the affidavit given to the officer was about an event that happened on October 21, 1964. We are not told whether the observations then made were made at night or in the daytime. Thereafter, certain transactions were observed, but again we are not told whether they occurred during the day or at nighttime. The warrant was not issued until December 16, 1964. Certainly, under such circumstances, no emergency could possibly exist, or no necessity for a nighttime search. There is absolutely nothing in the affidavit to indicate that a nighttime search was necessary. The majority seek to find the

"good cause" required by the statute by engaging in a form of claimed judicial notice—that narcotic offenses are serious and frequently engaged in at night. Of course, a great many crimes are serious and normally occur at night. That has nothing to do with whether in the particular case "good cause" has been shown for a night search. The majority have simply written that requirement out of the statute.

The search of a person's home is a drastic police measure at best. It should be resorted to only in cases where the officers have made a clear showing of necessity. When the Legislature has laid down limitations on such police intrusion, the courts should not evade them under the guise of interpretation. (*United States* v. *Palma*, 295 F. 149, 152.) The court should be on its guard to preserve the constitutional and legislative safeguards set up to prevent an abuse of the process. (*United States* v. *Musgrave*, 293 F. 203.) Statutes preventing nighttime searches should be strictly construed, and the court should be vigilant to see that statutory protections are observed and enforced. Narcotic cases do not constitute any exception to the general rule.

I would issue the writ of prohibition.