[Crim. No. 15698.  Second Dist., Div. Five.  Dec. 3, 1969.]

THE PEOPLE, Plaintiff and Appellant, v.
STEPHEN LANDERS et al., Defendants and Respondents.

COUNSEL

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood, and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant. lant.

Harry E. Weiss and Peter L. Knecht for Defendants and Respondents.

OPINION

KAUS, P. J.—On June 19, 1968, an information was filed charging defendants Landers and Wedderien with possession of marijuana. (Health & Saf. Code, § 11530.) On July 8, 1968, the trial court granted defendant's motion to set aside the information. (Pen. Code, § 995.) The People appealed and filed an opening brief on December 26, 1968. In the superior court defendants were represented by private counsel who remains their attorney on appeal. (*People* v. *Bouchard,* 49 Cal.2d 438 [317 P.2d 971].) The People's brief was duly served on him. On March 25, 1969, the notice provided for by rule 17b of the California Rules of Court was mailed by the clerk of this court.

We take the facts from the People's brief:

"Francis Schneider has been a member of the Los Angeles Police Department for three years and has received prior training relative to narcotic substances, including marijuana, which he has previously smelled on the breaths of human beings.

"While he was on duty during the evening of April 24, 1968, he observed the defendants, neither of whom he had ever seen before, staggering on the sidewalk. Forming the opinion that the defendants were probably intoxicated, he halted the police vehicle, alighted therefrom, called to them and approached them. Upon reaching the defendants, the witness observed that their eyes were dilated, bloodshot and watery; although he believed these items to be symptoms of drunkenness, he did not arrest the defendants but asked them for identification instead.

"Defendant Wedderien produced a driver's license which indicated that he lived at a location on Abargo Drive. Defendant Landers produced no identification; he stated that he was a transient, was living temporarily with Mr. Wedderien on Abargo Drive, and had no identification on his person but did have identification at the house that they were sharing. Defendant Landers stated his name and upon being asked how the witness could

determine whether or not that was his true name, replied, 'I have my identification at home, if you want to see it.'

"During the course of the above related conversation with defendant Landers, the witness again observed that his eyes were dilated, bloodshot and watery; regarding these items as symtomatic of drunkenness resulting from usage of alcohol, drugs or marijuana, the witness for the purpose of smelling the defendants' breaths, moved as close to them as possible, as a result of which he detected a strong odor of marijuana about their mouths.

"Forming the opinion that the defendants were under the influence of marijuana the witness arrested them for violation of Health and Safety Code section 11721, a misdemeanor committed in his presence. The witness advised each of the defendants of his constitutional rights, and each indicated that he understood.[1] The defendants were taken to the police station.

"At the police station, there was a further conversation with defendant Landers concerning his identification, in the course of which he again stated that it was at the Abargo Drive location, and that he would be willing to go there for the purpose of obtaining it so as to establish his identity; neither of the arrestees inquired relative to whether or not they were required to consent to go to the Abargo Drive location, and neither was informed that he was not required to give such consent. The witness informed defendant Landers of his reason for desiring to see the latter's identification; at no time was defendant Landers informed that the charge against him would be dropped and he would be released if his identity were established, but he was informed that the establishment of his identity might result in the setting of a lower bail.

"After obtaining the requisite consent from his superior, the witness, two patrol officers and defendants went to the Abargo Drive location[2] relative to which the witness possessed no search warrant.

"Upon arrival at the Abargo Drive location, the parties approached the front door, whereupon defendant Wedderien stated, 'I'm sorry. I forgot my key. I will have to crawl through the window,' which was immediately adjacent to the door. By reason of the fact that defendant Wedderien's identity had been established and his re-arrest would thereby be facilitated,

---

"[1]The transcript of the preliminary examination is unclear relative to the question of whether the defendants were first advised of their constitutional rights immediately upon arrest or while en route to the police station, as related below."

"[2]Following a statement, by defense counsel, that the witness's purpose in going to the Abargo Drive location was to conduct a search thereof, the Court said, 'There is nothing in this case, in observing the officer and listening to the testimony, from which I would draw that conclusion.' "

the witness was not afraid of permitting him to escape; defendant Wedderien was, therefore, for the purpose of opening the front door, permitted to crawl through the window into the house.[3] Moments after defendant Wedderien had entered the house, defendant Landers yelled to him to hand the identification through the window.

"Approximately five to ten seconds after he had entered the house, defendant Wedderien opened the front door and started to hand 'something' out; the witness did not receive the object that was being handed out and does not know whether or not defendant Landers received it. By the light of his flashlight, this being the sole source of light, the witness saw a 'round cylinderical (*sic*) object, which appeared to be a possible gun, in Mr. Wedderien's hand'; yelling, the witness inquired of defendant Wedderien relative to the nature of the object in his hand, whereupon defendant Wedderien immediately turned and ran through the house in the direction of the back door.

"With his gun still in its holster, the witness pursued defendant Wedderien through the house outside, dropping some property as he did so. After chasing defendant Wedderien for approximately three hundred feet over a hill and into a field, the witness re-captured him; having seen no fence, the witness believes that the location of defendant Wedderien's re-capture is part of the Abargo Drive premises, but does not know. Observing that defendant Wedderien was, at the time of his re-capture, not then in possession of the cylindrical object, the witness inquired of him relative to its disposition, to which the defendant replied, 'I had nothing in my hand.'

"The witness brought defendant Wedderien back into the house through the rear door; as they re-entered the front room, defendant Landers said, 'Here is my identification' and handed to the witness a receipt from Toto (*sic*: Roto?) Rooter. As witness was examining the receipt, he noticed, on the floor approximately six inches from his foot, an ashtray containing what appeared to be three hand-rolled marijuana cigarettes; he examined the cigarettes which, upon inspection, appeared to contain marijuana. The witness walked in the direction of the rear door for the purpose of recovering the property that he had dropped during the chase and while walking, saw, within the house, what appeared to be two bags of marijuana and three additional hand-rolled, partially-smoked marijuana cigarettes. Outside, in the area covered by the chase the witness found a pipe which appeared to be the cylindrical object previously observed in defendant Wedderien's hand. Further search revealed hashish, 'pills', 'Acapulco Gold

---

"[3]While the Clerk's Transcript, at certain points, indicates that it was defendant Landers who entered the house through the window, this appears, both from the balance of the testimony and from the context, to be an error."

marijuana' and additional marijuana seeds, stems and debris.[4] The defendants were again advised of their constitutional rights, and each again indicated that he understood."

## *Discussion*

█ It is difficult to figure out just what bothered the trial court about the seizure of the contraband. Apparently it found no fault with the initial arrest and the fact that defendants were brought back to the Abargo house. Even though the court thought that "the parties were very careful not to let the officers in the house," it naturally could not find anything wrong with the pursuit through the house when Wedderein was trying to get away. Apparently the court felt that Officer Schneider should not have reentered the house with his prisoner. If the court was incorrect on that point, the order must be reversed even if on proper motion some of the other contraband later discovered will have to be suppressed, for on returning to the house, without making any search, the officer saw the three hand rolled marijuana cigarettes in an ashtray. These alone were sufficient to require a denial of the 995 motion unless the officer had no right to be where he was.

We see no illegality. In the superior court counsel for defendants relied on *People* v. *Cedeno,* 218 Cal.App.2d 213 [32 Cal.Rptr. 246], which is not applicable at all. In that case officers acting on information received from a unreliable informer forced their way into defendant's hotel room. More in point perhaps are *Casteneda* v. *Superior Court,* 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641]; and *People* v. *Shelton,* 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665], relied on by different counsel before the magistrate. Those cases involved apparent consents to search, accompanied by behavior indicating involuntariness. Granted that had there, in this case, been a search grounded only on a consent which, under the circumstances would have been implied rather than express, a trier of fact might perhaps conclude that the consent was not voluntary. On a 995 motion the superior court was bound to apply the facts as found at the preliminary hearing. (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 271-272 [294 P.2d 23].) That the trial court may, in a proper case, find the facts to be different when presented with a motion under section 1538.5 is another matter. No such motion was made.

In any event, the legality of the officers' presence in the room does not rest on consent. He was surely entitled to chase Wedderien through the house. Nothing could be more natural than that he would return him by the

"[4]It was stipulated that Michael J. White was deemed to have been called, sworn, qualified as an expert forensic chemist and to have testified, on the basis of his analyses thereof, relative to the nature of the substances."

same route. Indeed Landers apparently anticipated that the officer would do so, because he waited for him in the "front" room with a piece of paper which he claimed to be his identification. Nothing in the record suggests that there was another, practical route to return the prisoner or that the officer deliberately brought him through the house in order to have an opportunity to make a visual "search."

We have purposely reversed on the narrowest possible ground. In view of the fact that defendants have filed no brief we have said as little as possible about the applicable law should they make a motion to suppress; nor have we concerned ourselves with any contraband other than the three cigarettes in the ashtray.

The order is reversed.

Aiso, J., and Reppy, J., concurred.