[Crim. No. 2674. First Dist., Div. One. Nov. 1, 1950.]

THE PEOPLE, Respondent, v. RALPH F. WAACK, JR., Appellant.

Ralph F. Waack, Jr., in pro. per., for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn and William M. Bennett, Deputy Attorneys General, for Respondent.

PETERS, P. J.—Defendant, by an information, was charged with having unlawfully furnished and administered heroin to Ida Signori in violation of section 11500[1] of the Health and Safety Code. He was tried by the court without a jury and found guilty. Although represented at the trial by counsel, he now appeals, in propria persona, from the judgment of conviction and from the order denying his motion for a new trial, contending that, before there was adequate proof of the corpus delicti, several statements given by him were improperly admitted into evidence, over objection, and that, in any event, such statements were illegally obtained from him by the police department.

So far as the first point is concerned, the facts proved, before the statements were admitted, are as follows:

On May 26, 1949, police officers discovered the dead and unclothed body of Ida Signori in the woods on the outskirts of Oakland. An autopsy disclosed that the cause of death was "generalized septicemia," but it also disclosed the presence of heroin in the body, and two needle punctures, recently made, on the inside of the elbows of the body. A night clerk of an Oakland hotel testified that at about 12:30 on the night of May 22, 1949, the deceased, accompanied by the defendant, had registered at the hotel. It was stipulated that the records of the seven hospitals in Oakland showed that they had not possessed, issued or administered any heroin during the period here involved. The evidence also shows that a record of all narcotic prescriptions issued by qualified persons must be sent monthly to the division of narcotic enforcement of the state, and it was stipulated that a certain witness, if called, would testify that an examination of the records from January 1st to July 1, 1949, disclosed no narcotic prescription issued for Ida Signori or to her under her various aliases.

Thus, at this stage of the proceedings, the prosecution had introduced evidence to show that Ida was found dead under suspicious circumstances with heroin in her body; that she had punctures on the inner side of her elbows such as are made by a hypodermic needle; and that most of the lawful sources from which a narcotic could be supplied had not issued a prescription to the deceased. From this evidence it is a

---

[1]So far as pertinent here, section 11500 of the Health and Safety Code provides: "Except as otherwise provided in this division, no person shall . . . furnish, administer or give away, . . . a narcotic except upon the written prescription of a physician, dentist, chiropodist, or veterinarian licensed to practice in this State."

permissible, although not an inevitable inference, that someone had unlawfully furnished or administered heroin to the deceased, that she had died, and that someone had tried to hide her body. The evidence also shows that defendant accompanied the deceased to an Oakland hotel shortly before her death.

This evidence was sufficient to establish the corpus delicti. All that was required, before the statements were admissible, was to show that heroin had been administered to the deceased, which was definitely shown, and to show by an inference from the direct or circumstantial evidence that such heroin had been administered by some person in violation of section 11500 of the Health and Safety Code. It was not necessary to show defendant's connection with the crime. "It is well settled law that the corpus delicti may be established without proof that the crime was committed by the person charged therewith, and that slight evidence is sufficient to establish the same." (*People* v. *Wade,* 71 Cal.App.2d 646, 654 [163 P.2d 59], citing many cases.) "The corpus delicti need only be proved prima facie or by slight evidence to lay the foundation for the introduction of evidence of a confession." (*People* v. *Harshaw,* 71 Cal.App.2d 146, 149 [161 P.2d 978].) "But it is likewise well settled that to authorize their reception in evidence and consideration by the jury, the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish the fact of guilt; rather slight or prima facie proof is sufficient for such purpose. [Citing several cases.] It may be proved by circumstantial evidence and by inferences reasonably drawn therefrom. [Citing authorities.] Direct or positive evidence is not essential [citing cases], nor is it necessary at this point to connect the defendant with the perpetration of the offense. [Citing authorities.]" (*People* v. *Mehaffey,* 32 Cal.2d 535, 545 [197 P.2d 12].)

Tested by these standards, the corpus delicti was sufficiently proved to warrant the introduction into evidence of the extra-judicial statements of defendant.

Two statements, both of which were transcribed, were made by defendant to the police, one on June 8, 1949, shortly after his arrest, and one on June 10, 1949. They are substantially identical as to content. In these statements defendant, in response to general questions, discussed his early life and he then recounted, mainly in narrative form and at some length,

his relationships with the deceased and his activities immediately before and after her death. He stated that the deceased was a prostitute operating in a Northern California town; that she periodically sent him substantial sums of money; that he occasionally visited her and she occasionally came to San Francisco to visit him; that they both used heroin, but that he was an addict and she was not; that she came down to San Francisco on May 22, 1949; that he bought several "papers" of heroin, and, after going to a show, the two came over to Oakland where she registered at the hotel under a fictitious name; that both took "shots" of heroin which he furnished. This, of course, is an admission that he committed the offense charged. Late that night, the statements continue, the defendant returned to San Francisco alone to acquire more heroin, leaving the deceased in her room, with a portion of a "paper" of heroin; that he purchased more heroin and returned to Oakland; that when he entered the girl's room he found her lying on the bed dead; that he became very frightened largely because he was afraid another girl he had in the same hotel, and also a prostitute, would discover his relationships with deceased; that after he had taken a couple of shots of heroin, he carted the body down six flights of stairs, put it in his automobile, and left it where it was subsequently found.

It should also be mentioned that not only did defendant admit that he had unlawfully furnished heroin to the deceased in these two statements, but he also made such an admission when he was arraigned for sentence. At that time his counsel requested that defendant be given a county jail sentence instead of being sent to the penitentiary, and defendant, in support of the request, asked leave to address the court personally. He then stated in part ". . . on her arrival there in San Francisco Ida did have $230, and Ida would have got heroin regardless of whether I had gotten it or not. I mean as far as knowing her way around the City or connections, I guess, she got a record there and was very well acquainted and could have purchased them herself."

The inspector who testified as to these statements, testified that no promises or threats were made, or coercion exercised, to secure them, and that they were voluntarily made. He did testify that when the statement of June 8th was taken defendant declared that shortly before his arrest he had taken a "shot" of heroin, and the inspector admitted that at that

time defendant appeared to be under the influence of the narcotic. The inspector also stated that when the statement of June 10th was taken defendant was suffering from "withdrawal symptoms"—symptoms resulting when an addict does not receive drugs. However, he was most positive that on both occasions defendant knew what was going on, knew what he was saying, and was capable of understanding and answering the questions put to him.

Defendant contends that, since he was suffering from the effects of a narcotic when the statements were taken, they were illegally secured from him and should not have been admitted. The question is not whether the defendant was suffering from the effects of a narcotic when the statements were taken, but whether such statements were freely and voluntarily given by defendant at a time when he knew and understood what he was saying. (*People* v. *Dorman,* 28 Cal.2d 846, 854 [172 P.2d 686], citing *People* v. *Farrington,* 140 Cal. 656, 661 [74 P. 288]; *People* v. *Ramirez,* 56 Cal. 533, 535 [38 Am.Rep. 73]; *People* v. *Aguilar,* 140 Cal.App. 87, 94 [35 P.2d 137, 142]; and *People* v. *Sameniego,* 118 Cal.App. 165, 176 [4 P.2d 809, 5 P.2d 653].) This was a question of fact for the trial court. It heard all of the testimony and apparently believed the inspector when he testified that the statements were spontaneous and that defendant knew and understood what he was saying. It was for the trial court to determine whether these statements were admissible. In the absence of a showing of abuse of discretion, its judgment will not be set aside. (*People* v. *Henry,* 86 Cal.App.2d 785 [195 P.2d 478].) Moreover, both statements are quite long, and both took over an hour to take. Their content, testing as they do the memory of defendant as to his early life, the circumstances under which he met the deceased, and the minute detail surrounding the key periods here involved, demonstrate that defendant was able to and did answer the question coherently, and did tell his story, largely in narrative form, with clarity.

█ The defendant also claims that the record shows that the inspector had "promised" him that if he confessed he would be found guilty of only a misdemeanor and not of a felony. The inspector testified that defendant asked him if he would get a misdemeanor sentence if he pled guilty, and the inspector told him that he believed that would be the result. Defendant did not plead guilty, so he could not have

been misled by this statement. Moreover, the record is perfectly clear that this conversation took place after June 10, 1949, which is the date the last statement was given by defendant. This being so, the alleged "promise" in no way affected the admissibility of the statements.

The order denying the motion for a new trial and the judgment appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.