[Crim. No. 3829.  First Dist., Div. One.  Sept. 18, 1961.]

THE PEOPLE, Respondent, v. ANDREW CHRISTOPHER McCOY, Appellant.

Malcolm J. Rainsford, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John L. Burton, Deputy Attorneys General, for Respondent.

TOBRINER, J.—Convicted of possession of heroin in violation of section 11500 of the Health and Safety Code, appellant urges on this appeal that the trial court erroneously admitted into evidence "narcotics seized as the result of an unlawful search and seizure." We have concluded, however, that the prosecution obtained the narcotics through a search to which appellant consented. Although appellant asserted that the searched room was not his own, he allowed the officers to enter it; the false assertion did not mitigate the granted permission.

The record discloses that at about 12:15 a. m. on December 15, 1959, Inspectors Martin and Lawlor of the San Francisco Police Department and Federal Narcotic Agent Niblo, acting on information acquired from an anonymous informer to the effect that "Andy the Salesman" was selling narcotics out of Room 9 at 524 Clement Street, San Francisco, proceeded to that address. Inspector Martin stationed himself on a stairway from which he could view the door to Room 9 while Inspector Lawlor and Agent Niblo remained "at the foot of the main stairway in an alcove just off the entrance to the hotel."

After about one-half hour the appellant emerged from Room 9, leaving the door open, and walked to the rear of the premises. Upon the elapse of another 20 to 25 minutes Martin summoned Lawlor and Niblo to the head of the stairs. Martin then followed the course taken by appellant and entered a "community restroom" where he found appellant sitting in a chair, apparently asleep. He aroused appellant, identified himself, and asked appellant his name and address; appellant, stating his name, said he lived on Cabrillo Street but was visiting someone in the building.

The inspector then related the following sequence; the

officers "took him out of the bathroom . . . into the hallway and asked him again if he didn't live in Room No. 9, and he again stated that he didn't, that he didn't live there at all, that he was just in visiting friends, and he was asked several times, as a matter of fact, whether or not he lived in that particular room, and he denied it all the way along, and finally we walked towards Room 9 and asked him once more, one more time if he lived there, and he again stated he didn't, and we asked him then if it would be all right if we searched the room, being as it didn't belong to him, and he said, 'Well, go ahead. It's not my room.' " The officers entered the room and found five capsules containing a white powder, later determined to contain heroin. Appellant then admitted he lived in Room 9 but denied any knowledge of the capsules.

Appellant's counsel objected to the admission of the testimony of the officers and moved to strike it, claiming that appellant did not consent to the search. Although no record of denial appears in the transcript the court apparently rejected the motion; the court subsequently found appellant guilty as charged.

Appellant raises a single contention on this appeal: the police officers unlawfully searched the room without his consent. He denies that his directions to " 'go ahead' " and search followed by his disclaimer of any connection with the room, constituted the giving of his consent. We do not believe that appellant's false disclaimer of residency vitiated the consent given to search the room; the evidence obtained was not inadmissible as the product of an unlawful search and seizure.

"It is settled law in this state that where the defendant freely consented to a search of the premises under his control, any search made pursuant thereto is not unreasonable." (*People* v. *King* (1959), 175 Cal.App.2d 386, 389 [346 P.2d 235]; *People* v. *Gorg* (1955), 45 Cal.2d 776, 782 [291 P.2d 469].) While the prosecution has the burden of proving consent, its existence is a question of fact to be determined by the trier of fact. (*People* v. *Gorg, supra,* 45 Cal.2d 776, 782; *People* v. *Roberts* (1956), 47 Cal.2d 374, 377 [303 P.2d 721].)

The factual situation in the instant case compares to that in *People* v. *White* (1958), 159 Cal.App.2d 586 [324 P.2d 296], wherein the defendant claimed that the search of his room "was not a proper incident of his arrest." (P. 592.) The appellate court, however, determined that defendant had given his consent to the search and that therefore the prosecution

did not need to show "that the search and seizure were reasonable as incident to a proper arrest." (P. 592.) The court predicated its finding of consent on the defendant's words to the officers on three occasions after his arrest that they could search the room in which the narcotics were ultimately discovered, although defendant denied that he lived there. The court concluded: "Although during this time defendant may have hoped to mislead the officers by denying he lived at that location, he nevertheless on three occasions told them they could search the room. . . . We conclude that the trial court was justified in finding a voluntary consent of the defendant to a search of his room." (P. 593.) Appellant's attempt to distinguish the ruling upon the ground that "the search was incident to a lawful arrest" fails in view of the court's specific finding of the defendant's voluntary consent to the search.

In the instant case appellant's denial of residency did not affect, and certainly did not destroy, the fact of his consent to the search of the room. Appellant did reside in the room; he had the right to permit the officers to enter the room; he did so. Appellant's attempted deception as to his occupancy is irrelevant.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.