[Crim. No. 8950.    Second Dist., Div. Three.    May 20, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERTO VARGAS GARCIA, Defendant and Appellant.

Matthews & Cooney, Al Matthews, E. V. Cavanagh and Don Edgar Burris for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—By an information filed on November 27, 1962, the defendant was accused of a violation of section 11500 of the Health and Safety Code, a felony. It was alleged that on or about November 5, 1962, in the County of Los Angeles he "did willfully, unlawfully and feloniously have in his possession a narcotic, to wit, heroin." In the information it was also alleged that defendant had suffered two prior felony convictions, both being for violations of section 11500 of the Health and Safety Code. In a trial by the court without a jury the defendant was found guilty as charged and the allegations as to the prior convictions were found to be true. The court found him to be ineligible for proceedings under the provisions of section 6451 of the Penal Code.[1] (See Pen. Code, § 6452.) The defendant's counsel agreed that the defendant was not eligible for probation. The defendant declined to file an application for probation and stated that he refused probation. He requested that he be sentenced immediately. He was sentenced to imprisonment for the term prescribed by law. This appeal is from the judgment.

Since one of the defendant's contentions on appeal relates to the admission in evidence of certain exhibits over the defendant's objection made on the ground that they were inadmissible because secured as the result of an illegal search and seizure, a summary of the testimony as to the circumstances under which that evidence was obtained will be given.

---

[1] Judgment was pronounced on January 30, 1963. The reference to section 6451 is to the provisions thereof as they then existed, prior to the amendment in 1963 which added the following language: "In any case to which section 6452 applies, the judge may request the district attorney to investigate the facts relevant to the advisability of commitment pursuant to this section. In unusual cases, wherein the interest of justice would best be served, the judge may, with the concurrence of the district attorney and defendant, order commitment notwithstanding section 6452." (Stats. 1963, ch. 1706, § 8; see *People* v. *Ortiz*, 61 Cal.2d 249, 255 [37 Cal.Rptr. 891, 391 P.2d 163].)

Howard C. Evans, a police officer for the City of Los Angeles assigned to the narcotic division, testified that he had received information that one Richard Madrid was selling narcotics at Charley's Bar and the Manila Cafe at Second and Hill Streets. Officer Evans and his partner went to Second and Hill Streets where, at approximately 9 p.m., Officer Evans observed the defendant walking on the sidewalk. Defendant appeared to give recognition to an individual in the cafe. He then entered Charley's Bar on the corner. The officer thought that the defendant was Richard Madrid and followed him into the bar. When the defendant observed the two officers he " [S]huffled his feet and jumped in the air off the floor approximately a foot or so, and he appeared to swallow at the same time." The defendant then walked out of the bar to the sidewalk, where Officer Evans stopped him. With the aid of a flashlight, the officer observed the defendant's eyes and noticed that they were contracted. Officer Evans asked the defendant if he was a user of narcotics and he stated that he was. Officer Evans asked him how long it had been since "he had a fix" and the defendant mentioned the time of 5 o'clock that evening. Defendant was then taken to the police car where he displayed his arms to the officers. Officer Evans observed a fresh needle mark on the defendant's right arm, as well as several other marks. At this time the defendant was under arrest for being under the influence of narcotics.[2]

Upon further questioning, the defendant stated that he lived on 37th Street. At this time Officer Evans observed a small round tag hanging from the defendant's waistband or

[2]While the defendant makes no contention as to the matter, it is to be noted that at the trial on January 30, 1963, Officer Evans did not specifically testify as to the date of the arrest and search and seizure. He testified, however, that he had been assigned to the narcotic detail since "June of '62," and that he had first observed the large envelope containing the exhibits "when the face was prepared on the night of the arrest on November 5." The stipulation as to the examination of the contents of the three balloons by a chemist (see footnote 3 to this opinion) embodied the fact that the chemist received the exhibit from the property division of the police department on November 6, 1962. This constituted a sufficient basis for the inference that if the evidence sustained the determination that an offense had been committed, such offense occurred "on or about the 5th day of November, 1962," as alleged in the information. (See *People* v. *Hopwood,* 164 Cal.App.2d 391, 394 [330 P.2d 447]; *People* v. *Hood,* 150 Cal.App.2d 197, 202 [309 P.2d 856]; see also *People* v. *McGill,* 10 Cal.App.2d 155, 159-160 [51 P.2d 433].)

by his belt. The tag had the number 311 on it. He asked the defendant what it was and the defendant produced a key. Officer Evan's partner examined the defendant's papers to determine his identity and place of residence and found a rent receipt of the Rose Hotel. On the top of the receipt was the number 311, corresponding to the number on the tag. The officers asked the defendant if he lived at the Rose Hotel. He replied that he did not but had occupied a room there the night before and was currently living with his aunt at First and Clarence. Officer Evans further testified as follows: "At this time I said, 'Well, how about going over and looking at your room here at the Rose Hotel,' and he said, 'Sure, let's go.' He said, 'I don't live there any more.' So I asked him the location of the Rose Hotel, and he said it was near First and Clarence Street, somewhere around there. So we proceeded in that direction, and while outbound on First Street, I passed Rose Street. I am acquainted with that area, and there is a Rose Hotel south of First Street. . . . We asked the defendant first if this was the hotel, and he was evasive, said he wasn't sure. We went to the ... hotel and checked with the manager, and he stated no, the defendant was not registered there, and he had no room 311. We then proceeded out First Street to Soto Street and northbound to 150 North Soto Street, the Rose Hotel. And upon going inside, we located room 311. I inserted the key in the lock, and the door unlocked."

Officer Evans did not recall that the defendant said anything when they reached room 311 and the officer inserted the key in the lock. The defendant was then standing by his side. Inside the room the officers found articles of clothing, which the defendant admitted were his,[3] a letter addressed to the defendant, three balloons containing a white powdery substance,[4] and a "hype kit."

On cross-examination, Officer Evans stated that he did not have a warrant for defendant's arrest and that he did not have a search warrant with respect to the defendant or any dwelling in which he lived.

---

[3] The officer testified that the defendant's statement as to the clothing was made freely and voluntarily.

[4] It was stipulated at the trial that it was deemed that William King, a chemist employed by the Los Angeles Police Department, had testified that on November 6, 1962, he received the exhibit containing the "three balloons of powder" and that he made an examination thereof and formed the opinion that the powder was heroin.

No testimony in his own behalf was presented by the defendant.

▮ In view of the defendant's appearance which warranted a belief in good faith on the part of Officer Evans that the defendant was then under the influence of a narcotic, the arrest at Second and Hill Streets was proper. (*People* v. *Rogers,* 207 Cal.App.2d 254, 259 [24 Cal.Rptr. 324].) The defendant contends, however, that the search of room 311 cannot be justified as incident to his arrest for it was distant from the place of arrest and not contemporaneous therewith. ▮ Since the search was made without a warrant, the burden was on the prosecution to show proper justification. (*People* v. *Shelton,* 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665].) ▮ As stated in the recent case of *Stoner* v. *State of California,* 376 U.S. 483, at page 486 [84 S.Ct. 889, 891, 11 L.Ed.2d 856, 859] : "But a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." In accord is *Castaneda* v. *Superior Court,* 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641]. ▮ The evidence herein indicates that the search took place some blocks away from the place of arrest and, under the rule just stated, it cannot be justified as incident to the arrest. (*People* v. *Shelton, supra,* 60 Cal.2d 740, 744.)

If, however, the defendant freely consented to the search of the hotel room, it was not necessary for the People to show that the search and seizure were reasonable as incident to a proper arrest before the articles found could be received in evidence. (*People* v. *McLean,* 56 Cal.2d 660, 664 [16 Cal. Rptr. 347, 365 P.2d 403].) But the defendant contends that there was not a free and voluntary consent on his part because he was in custody, was evasive and noncooperative, and was under the influence of a narcotic.

▮ Whether in a particular case consent to a search was voluntarily given is a question of fact to be determined by the trier of fact in the light of all the circumstances. (*People* v. *Shelton, supra,* 60 Cal.2d 740, 746.) ▮ The fact that the defendant was under arrest was a circumstance of particular significance in the determination of the question of consent (see *Castaneda* v. *Superior Court, supra,* 59 Cal.2d 439, 443), but it was not conclusive with respect to that issue. (*People* v. *Fischer,* 49 Cal.2d 442, 448 [317 P.2d 967].) ▮ Moreover, the fact that the defendant was under the influence of a narcotic did not necessarily preclude the giving

of a voluntary consent. (See *People* v. *Waack*, 100 Cal.App. 2d 253, 256-257 [223 P.2d 486]; *People* v. *Sanchez*, 191 Cal. App.2d 783, 790 [12 Cal.Rptr. 906]; cf. *People* v. *Dorman*, 28 Cal.2d 846, 854 [172 P.2d 686].) ▓▓ It is true that conduct on the part of a defendant subsequent to his giving an apparent consent to a search may establish that the apparent consent was not voluntarily given. (*People* v. *Shelton, supra,* 60 Cal.2d 740, 745; *Castaneda* v. *Superior Court, supra,* 59 Cal.2d 439, 443.)

▓▓ In the present case, however, the trial court was warranted in finding that the defendant voluntarily consented to the search of room 311 of the Rose Hotel. The stop at the first hotel was brought about by Officer Evans rather than by the defendant. The defendant's uncertainty as to whether the Rose Hotel on Rose Street was the one in which he had registered was equivocal on the issue of whether he was then engaging in evasive conduct. A review of the evidence leads to the conclusion that there was no conduct on the defendant's part subsequent to his statement that the officers could look at the room which, as a matter of law, made it mandatory for the trier of fact to find that the consent to the search was not voluntary. (Cf. *People* v. *McCoy*, 195 Cal.App.2d 655 [16 Cal.Rptr. 117]; *People* v. *White*, 159 Cal.App.2d 586, 592-594 [324 P.2d 296].) Apropos is the reasoning of the court in the *McCoy* case which was expressed as follows (195 Cal. App.2d, at page 658): ''In the instant case appellant's denial of residency did not affect, and certainly did not destroy, the fact of his consent to the search of the room. Appellant did reside in the room; he had the right to permit the officers to enter the room; he did so. Appellant's attempted deception as to his occupancy is irrelevant.''

▓▓ Defendant's final contention is that the trial court erred in holding that he was not eligible for proceedings pursuant to section 6451 of the Penal Code because he had suffered the two prior felony convictions which were alleged, each of such convictions being for a violation of section 11500 of the Health and Safety Code.[5] The defendant places reli-

---

[5]The trial court's determination was governed by section 6452 of the Penal Code which provides in part that: ''Sections 6450 and 6451 shall not apply to persons convicted of ... any offense set forth in [various parts of the Health and Safety Code including section 11500] ... for which the minimum term prescribed by law is more than five years in state prison.''

Section 11500 of the Health and Safety Code provides in part that if

ance on the fact that the first of such convictions, which occurred in 1954, resulted in his commitment to the Youth Authority and contends that under section 17 of the Penal Code, as it presently is worded, the offense was a misdemeanor.[6] But it has been held that the determination of whether the former offense was a misdemeanor or a felony is to be made in accordance with the law as it was at the time of the conviction and that the 1959 amendment to section 17 is not to be given a retroactive effect. (*People* v. *Zaccaria,* 216 Cal. App.2d 787, 789-790 [31 Cal.Rptr. 383] ; *People* v. *Ramsey,* 202 Cal.App.2d 856, 859 [21 Cal.Rptr. 406].)

From 1947 until the effective date of a legislative change in 1957, section 17 of the Penal Code provided in part as follows: ''Where a court commits a defendant to the California Youth Authority upon conviction of a crime punishable by imprisonment in the state prison or fine or imprisonment in a county jail, in the discretion of the court, the crime shall be deemed a felony until and unless the court, after the person committed has been discharged from control by the California Youth Authority, . . . on application of the person so committed and discharged, makes an order determining that the crime of which he was convicted was a misdemeanor.'' It does not appear from the record that the defendant obtained such an order. Therefore, the crime of which the defendant was convicted in 1954 must be deemed to have been a felony. (*People* v. *Ramsey, supra,* 202 Cal. App.2d 856, 858-859.)

▇▇▇ Moreover, apart from the argument made by the defendant which has just been considered, the defendant was not eligible for proceedings pursuant to the provisions of section 6451 of the Penal Code because the 1954 conviction, even if it constituted a misdemeanor, was a conviction which affected the extent of the minimum term of imprisonment of the defendant under the judgment from which the present appeal is taken. The 1954 conviction was of a ''felony offense'' of the nature designated with respect to punish-

a person has been ''previously convicted two or more times of any felony offense described in this division ... the previous convictions shall be charged in the indictment or information and if found to be true ... he shall be imprisoned in the state prison from 15 years to life. ...''

[6]Section 17, as amended in 1959, provides in part: ''Where a court commits a defendant to the Youth Authority upon conviction of a crime punishable, in the discretion of the court, by imprisonment in the state prison or fine or imprisonment in a county jail, the crime shall be deemed a misdemeanor.''

ment in section 11500 of the Health and Safety Code (see footnote 5 to this opinion) by virtue of the definition found in section 11504 of that code. Section 11504, which was added to the code in 1961, is as follows: "As used in this article 'felony offense,' and offense 'punishable as a felony' refer to an offense for which the law prescribes imprisonment in the state prison as either an alternative or the sole penalty, regardless of the sentence the particular defendant received." (See *People* v. *Wallace,* 59 Cal.2d 548, 550 [30 Cal.Rptr. 449, 381 P.2d 185].)

There was no error in the determination of the trial court that it was not empowered to act under the provisions of section 6451 of the Penal Code with respect to the defendant.

The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 15, 1964. Traynor, J., and Peters, J., were of the opinion that the petition should be granted.