[Crim. No. 13522.    Second Dist., Div. One.    Mar. 13, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES LEE LYLES, Defendant and Appellant.

Worrell & Niles and Claude Vibart Worrell, Sr., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Charged by indictment with possession of heroin for sale (§ 11500.5, Health & Saf. Code) and possession of marijuana for sale (§ 11530.5, Health & Saf. Code), defendant was found guilty and sentenced to the state prison. He appeals from the judgment and order denying motion for a new trial. The appeal from the order is dismissed.

On April 3, 1966, Lapriel Alyett, the manager of an apartment house at 4620 Coliseum Drive, rented apartment 204 to defendant whom she knew as Jose Rodriguez, for which he gave her a deposit; on April 9, 1966, he paid the rent for the balance of the month and on May 7, 1966, he paid another month's rent to Mrs. Urban, assistant manager, who issued the receipt to "Jose Rodriguez." Almost every day Mrs. Alyett saw defendant come and go from apartment 204.

Officer White had made an investigation concerning the utilities in apartment 204 and learned that the telephone was registered to defendant. Around 12:16 a.m. on June 1, 1966, the officer was near the front of 4620 Coliseum Drive when he saw one Haley, a narcotic drug addict free on bail on a charge of selling heroin, arrive at the address in a white Oldsmobile station wagon; Haley remained in the car. Then he observed defendant in the company of a woman approach Coliseum Drive in a late model Pontiac and stop half a block from

Haley's automobile. Defendant got out of his car, walked up to the Oldsmobile and opened the door; Officers White and Sanderson then approached him. Officer White asked defendant for identification and his purpose for being in that neighborhood; defendant gave him an out-of-state license in his name and said he lived at 118th Place. Officer White asked him if he had anything to do with or if he lived in apartment 204 at 4620 Coliseum Drive in front of which they were standing; defendant said he was on his way to see a girl in Hollywood, he lived at 118th Place and he had nothing to do with apartment 204. Then Officer White asked if he had any objection to a search of apartment 204 and defendant replied, "I have no objection. I have nothing to do with apartment 204." The officers and defendant went to the manager's apartment and knocked; Officer White asked her if she knew defendant and she replied, "Yes, that is Mr. Rodriguez, he lives in apartment 204." The officer then turned to defendant, who was standing near him, and informed him that the manager had identified him as the person renting and living in apartment 204, and asked him again if he had any objection to a search of the apartment; defendant said that he did not live there and did not care what they did to the apartment. Then four officers, including White and Sanderson, defendant and the manager went to 204; the manager provided the key and Officer Garrahan unlocked the door.

The following were found in apartment 204: a red suitcase containing eight bags of marijuana weighing 21 pounds; a brown suitcase containing 2 grams of marijuana; two boxes of rubber contraceptives; a can of material marked "Merck USP Powder"; a box containing measuring spoons, transfer funnels, etc.; an apartment lease and an application to rent. Seventeen rubber contraceptives contained powder weighing 288 grams, nine of which were tested. Two contained a yellow powder weighing 15 grams—negative for narcotics; seven contained 10 percent heroin. Of seventeen small balloons weighing 8.4 grams found in the apartment, four were tested; they contained 10 percent heroin. It was officer White's opinion that the heroin and marijuana were possessed for the purpose of sale, based on the quantity. the quantity packed in each package, the quality, the manner in which the narcotics were packed and the paraphernalia and the equipment found in the apartment. The quantity of marijuana would make over 40,000 cigarettes at a fair market value of $.50 each. Part of the paraphernalia was the measuring can of milk sugar which is a sterilized substance commonly used by narcotic users to

dilute heroin and to extend the quantity. Defendant was arrested. Officer White also recovered $903, $185 of which was found on a couch cushion in the apartment, the remaining on defendant.

Appellant's contention that his arrest was without probable cause, thus the search of apartment 204 was not lawful, is predicated on the unsupported claim that he was arrested on the sidewalk.

Before Officer White went to 4620 Coliseum Drive, he knew that the telephone in apartment 204 was registered to defendant; a little after midnight he saw a narcotic addict on bail on a charge of selling heroin arrive at the address and remain in his parked car; then he saw defendant approach Coliseum Drive, park half a block away, walk to the automobile in which the addict waited and open the door. There is nothing improper about an officer approaching a pedestrian on the street for questioning when to a reasonable person such a course of conduct appears necessary to the discharge of his duty. (*People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Michael,* 45 Cal.2d 751, 752 [290 P.2d 852]), and circumstances short of probable cause to make an arrest may justify such action. (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal. Rptr. 18, 380 P.2d 658]; *People* v. *Dumas,* 251 Cal.App.2d 613, 616 [59 Cal.Rptr. 541].) Officer White had the right to detain defendant for the purpose of investigation and for questioning. The officer asked him for his identification and what he was doing in the neighborhood; defendant gave him an out-of-state driver's license in his name and told him he lived at 118th Place and was going to see a girl in Hollywood. Asked if he had anything to do with or lived in apartment 204, defendant answered that he lived on 118th Place and had nothing to do with the apartment and had no objection to a search of apartment 204. Upon being advised by the manager that defendant was Mr. Rodriguez who lives in apartment 204, the officer again asked defendant if he had any objection to a search of apartment 204; he answered that he did not live there and did not care what they did to the apartment. The inconsistencies which had become apparent by the manager's identification of defendant as residing in apartment 204, the officer's prior knowledge that a telephone in the name of defendant had been installed in apartment 204 and defendant's denial that he lived there or knew anything about the apartment, justified further investigation. Thus,

they went to the apartment and with a key supplied by the manager the door was unlocked. The search revealed the narcotics which justified defendant's arrest. (§ 836, Pen. Code; *People* v. *Cockrell*, 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116] ; *People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

█ Appellant claims there was no factual consent to search apartment 204 and, even if there were, the same was obtained by illegal conduct of the police, and, in any event, the consent was not voluntary. Twice defendant disclaimed any knowledge of apartment 204 and in response to whether he objected to a search of the apartment he told the officers he did not, he did not live there and did not care what they did to the apartment.

█ Whether in a particular case consent was in fact given and the same was voluntary, is a question of fact to be determined in light of all the circumstances. (*People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852] ; *People* v. *Bilderbach*, 62 Cal. 2d 757, 762-763 [44 Cal.Rptr. 313, 401 P.2d 921] ; *People* v. *Smith*, 63 Cal.2d 779, 798 [48 Cal.Rptr. 382, 409 P.2d 222].) A finding in this connection which is supported by substantial evidence will be upheld. (*People* v. *Bilderbach*, 62 Cal.2d 757, 762-763 [44 Cal.Rptr. 313, 401 P.2d 921] ; *People* v. *Terry*, 57 Cal.2d 538, 559 [21 Cal.Rptr. 185, 370 P.2d 985] ; *People* v. *Burke*, 47 Cal.2d 45, 49 [301 P.2d 241].) █ The fact is that in spite of his deceit, defendant actually resided in apartment 204, thus he had a right to permit the officer to enter, which he did; he also had the right to deny permission but instead chose to carry on his deception. (*People* v. *McCoy*, 195 Cal.App.2d 655, 658 [16 Cal.Rptr. 117].) In *People* v. *White*, 159 Cal.App.2d 586 [324 P.2d 296], the officers arrested defendant on the street. Asked by them if they could search his room, he answered, ''Certainly. Go ahead''; asked where he lived, defendant told them 1527 West Adams. However, having been advised by an informer of the location of defendant's residence, the officers drove him directly to 1610 West 27th Street where again they asked him if he minded a search of his room; he replied, ''Go ahead. I don't live here anyway.'' With a key taken from defendant's pocket, the officer opened the door whereupon defendant said, ''I don't live here''; the officer then said, ''Then you don't mind if we search'' and defendant answered, ''Certainly. Go ahead. I don't live here.'' The facts in the instant case are even stronger than those in *White* because in the latter defendant

was under arrest at the time the conversation occurred. Said the court at page 593: "Although during this time defendant may have hoped to mislead the officers by denying he lived at that location, he nevertheless on three occasions told them they could search the room. The officers then located the landlady who identified the defendant as the person to whom she rented room Number 1 on Sunday morning, June 23rd. It was in this room the heroin was found. . . . We conclude that the trial court was justified in finding a voluntary consent of the defendant to a search of his room."

In *People* v. *McCoy,* 195 Cal.App.2d 655 [16 Cal.Rptr. 117], the officers asked defendant if they could search room 9 at a certain address; he told them, "Well, go ahead. It's not my room." Said the court at page 658: "In the instant case appellant's denial of residency did not affect, and certainly did not destroy, the fact of his consent to the search of the room. Appellant did reside in the room; he had the right to permit the officers to enter the room; he did so. Appellant's attempted deception as to his occupancy is irrelevant."

The evidence shows that defendant freely and voluntarily consented to the search of apartment 204, and the record shows no conduct on the part of defendant subsequent to giving his consent to search which would establish that the same was not voluntarily given. (See *People* v. *Shelton,* 60 Cal.2d 740, 745 [36 Cal.Rptr. 433, 388 P.2d 665]; *Castaneda* v. *Superior Court,* 59 Cal.2d 439, 443 [30 Cal.Rptr. 1, 380 P.2d 641].) ■ It is settled law in this state that where the defendant freely consented to a search of the premises under his control, any search made pursuant thereto is not unreasonable. (*People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469]; *People* v. *McCoy,* 195 Cal.App.2d 655, 657 [16 Cal.Rptr. 117]; *People* v. *White,* 159 Cal.App.2d 586, 592 [324 P.2d 296].)

■ Appellant's contention that since he "was in custody, suspicion had focused on him, and the search was for the purpose of securing evidence against him" (*People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] he was entitled to be warned of his constitutional right to be free from search, is without substance. In *People* v. *Smith,* 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222], one of the defendants had been arrested and taken to the station where she gave the police consent to search her house and made some incriminating statements. The Supreme Court held that the statements were inadmissible because of failure

of the police to give the warning required by *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; but the search of the house was held to be lawful by reason of her voluntary consent. (P. 798.) (See also *People* v. *Campuzano,* 254 Cal.App.2d 52, 56 [61 Cal.Rptr. 695].) The present case is even stronger than *Smith* because when defendant gave his consent to search apartment 204 he was not under arrest; defendant was not arrested until the contraband was found in apartment 204.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.